STEVEN C. GLICKMAN, State Bar No. 105436
Email: scg@glickman-law.com
NICOLE E. HOIKKA, State Bar No. 306324
Email: neh@glickman-law.com
**GLICKMAN & GLICKMAN,**
**A LAW CORPORATION**
 9460 Wilshire Boulevard, Suite 330
 Beverly Hills, CA 90212
 Telephone:  (310) 273-4040
 Facsimile:  (310) 273-0829


JOHN E. SWEENEY, State Bar No. 116285
Email: jes@thesweeneyfirm.com
**THE SWEENEY FIRM**
 315 S. Beverly Drive, Suite 305
 Beverly Hills, CA 90212
 Telephone:  (310) 277-9595
 Facsimile:  (310) 277-0177

Attorneys for Plaintiffs M.B. III, etc., et al.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| **M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.;  TWYLLER WEARY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.,**<br><br>                    **Plaintiffs,**<br><br>          v.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; DAVID BAUGHMAN, individually and in his official capacity as Warden of California State** | Case No. 2:17-cv-02395-WBS-DB<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>  1) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Deliberate Indifference)<br><br>  2) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Supervisory Liability for Policy, Custom, or Practice);<br><br>  3) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Supervisory Liability for Failure to Train and Supervise and Negligent Hiring); |

Prison-Sacramento; Sergeant TODD MANES [previously named as DOE 1], individually and in his official capacity as a correctional officer and supervisor at California State Prison-Sacramento; KYLE MOHR [previously named as DOE 6], individually and in his official capacity as a correctional officer at California State Prison-Sacramento; ANDREW BALLARD [previously named as DOE 7], individually and in his official capacity as a correctional officer at California State Prison-Sacramento; MICHAEL MUNROE [previously named as DOE 8], individually and in his official capacity as a correctional officer at California State Prison-Sacramento; STACY VUE [previously named as DOE 9], individually and in her official capacity as a correctional officer at California State Prison-Sacramento; and DOES 2, 3, 4, 5, and 10,

                     **Defendants.**

4) Negligence (Wrongful Death); and

5) Violation of Government Code §§ 844.6 and 845.6 (Failure to Summon Immediate Medical Care)


    DEMAND FOR JURY TRIAL


Trial Date: None
Action Filed: 11/14/2017

 

COMES NOW Plaintiffs M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, and TWYLLER WEARY, an individual (hereinafter collectively "Plaintiffs"), and show this honorable court the following:

<u>**JURISDICTION AND VENUE**</u>

1.   This Court has jurisdiction under 28 U.S.C. § 1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.SC. § 1983, and 42 U.S.C. § 12188(a). This Court has supplemental jurisdiction over Plaintiff M.B. III's state law causes of action under 28 U.S.C. § 1367.

2.   Venue is proper in this judicial district pursuant to

1  28 U.S.C. § 1391(b) because the unlawful acts and practices

2  alleged herein occurred at California State Prison-Sacramento

3  (hereinafter "CSP-Sacramento") in Represa, in Sacramento County,

4  California, within the Eastern District of California.

5  **THE PARTIES**

6  3.   Plaintiff M.B. III is the biological son, successor in

7  interest, and personal representative of the estate of his father

8  Milton Beverly, Jr. ("Decedent"). He brings this claim for

9  himself personally, as Decedent's successor in interest and heir,

10  as the personal representative of the estate, and, as applicable,

11  pursuant to California Code of Civil Procedure §§ 377.30 and

12  377.60.

13  4.   Plaintiff TWYLLER WEARY is the mother, successor in

14  interest, and personal representative of the estate of her son,

15  Decedent. She brings this claim for herself personally, as

16  decedent's successor in interest and heir, as the personal

17  representative of the estate, and, as applicable, pursuant to

18  California Code of Civil Procedure §§ 377.30 and 377.60.

19  5.   The declarations of TITICE BEVERLY as Guardian Ad Litem

20  for M.B. III and TWYLLER WEARY are attached hereto as Exhibits

21  "1" and "2."

22  6.   Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND

23  REHABILITATION (referred to herein as "CDCR") is, and was at all

24  times herein alleged, an agency of the State of California. CDCR

25  operates the correctional facility at CSP-Sacramento, where

26  Decedent was incarcerated at the time of the events giving rise

27  to this litigation. As such, Defendant CDCR is liable for

28  violating the rights of Plaintiffs and Decedent, including but

1    not limited to failing to summon medical care where there was

2    knowledge of the immediate need for medical care, as required

3    under California Government Code §§ 844.6 and 845.6.

4        7.   Defendant Warden DAVID BAUGHMAN (referred to herein as

5    "BAUGHMAN") was during the relevant periods employed by CDCR as

6    the Warden of CSP-Sacramento. As the Warden, he was responsible

7    for the management and control of CSP-Sacramento, was responsible

8    for the administration of CSP-Sacramento, and was responsible for

9    the promulgation of the policies and procedures and allowance of

10   the practices/customs pursuant to which the acts of the employees

11   of CSP-Sacramento alleged herein were committed. Warden BAUGHMAN

12   was also responsible for the care, custody, and control of all

13   inmates housed in CSP-Sacramento.

14       8.   Warden BAUGHMAN was responsible for the supervision,

15   training, and hiring of persons, agents, and employees working

16   within CSP-Sacramento, including custodial staff, correctional

17   officers, counselors, advisors, nurses, doctors, physician

18   assistants, medical staff, mental health staff, education staff,

19   and supervisors, and for the implementation of policies and

20   procedures at CSP-Sacramento.

21       9.   Warden BAUGHMAN was regularly provided with reports

22   concerning the treatment of mentally ill inmates, improper

23   classification of inmates in the jails, jail suicides, and other

24   violations involving the housing, care, mental healthcare, and

25   treatment of inmates at CSP-Sacramento.

26       10.  Pursuant to California law and his duties as the Warden

27   of CSP-Sacramento, Defendant BAUGHMAN is sued in his individual

28   capacity, as a supervisor for his own culpable action or inaction

THIRD AMENDED COMPLAINT FOR DAMAGES

1  in the training, supervision, or control of his subordinates; or

2  for his acquiescence in the constitutional deprivations which

3  this Third Amended Complaint alleges; or for conduct that shows a

4  reckless or callous indifference to others.

5      11.  Defendant BAUGHMAN'S affirmative conduct involves his

6  knowing failure to ensure enforcement of the specific policies,

7  rules, or directives that applied to Decedent, and which set in

8  motion a series of acts that Defendant BAUGHMAN knew or

9  reasonably should have known would cause others to inflict

10  constitutional injuries on Decedent. Defendant BAUGHMAN both made

11  policy and supervised the officers, prison staff, nurses,

12  doctors, physician assistants, medical personnel, mental health

13  staff, and Licensed Psychiatric Technicians at CSP-Sacramento.

14  Defendant BAUGHMAN also directly and indirectly participated in

15  or made decisions about hiring employees and staff at CSP-

16  Sacramento.

17      12.  Defendant BAUGHMAN was aware of the fact that inmates

18  at CSP-Sacramento suffered from mental disabilities and

19  disorders. Defendant BAUGHMAN was aware that Decedent and others

20  similarly situated who suffer from mental disabilities and

21  disorders require a heightened standard of care and supervision.

22  Nevertheless he failed to enforce those policies and procedures

23  which would ensure a heightened standard of care and supervision,

24  and promulgated policies, procedures, practices, and customs

25  which resulted in constitutional violations by the employees of

26  CSP-Sacramento.

27      13.  Defendant Sergeant TODD MANES (Badge #69918)

28  [previously named as DOE 1] was the Enhanced Outpatient Program

sergeant charged with supervising the correctional officers at the time of Decedent's death. He was employed by CDCR as a correctional officer and as supervisory personnel at CSP-Sacramento at all times relevant to this complaint. He was among the first responders on scene after Decedent was discovered in his cell after committing suicide. Defendant MANES is being sued in his individual capacity in the federal claims and negligence/wrongful death claim and sued in his individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

14.   Defendant Correctional Officers KYLE MOHR (Badge #82617) [previously named as DOE 6] and ANDREW BALLARD (Badge #86712) [previously named as DOE 7] were the B Yard Officers charged with supervising and monitoring the area in which Decedent was housed on the day of Decedent's death. They were employed by CDCR as correctional officers at CSP-Sacramento at all times relevant to this complaint. They were among the first responders on scene after Decedent was discovered in his cell after committing suicide. Defendants MOHR and BALLARD are being sued in their individual capacities in the federal claims and negligence/wrongful death claim and sued in their individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

15.   Defendant Correctional Officer MICHAEL MUNROE (Badge #54508) [previously named as DOE 8] was the B-5 Control Officer charged with supervising and monitoring the area in which Decedent was housed on the day of Decedent's death. He was employed by CDCR as a correctional officer at CSP-Sacramento at

all times relevant to this complaint. He was among the first responders on scene after Decedent was discovered in his cell after committing suicide. Defendant MUNROE is being sued in his individual capacity in the federal claims and negligence/wrongful death claim and sued in his individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

16.   Defendant Correctional Officer STACY VUE (Badge #86970) [previously named as DOE 9] was the Yard Gunner charged with supervising and monitoring from the control booth the area in which Decedent was housed on the day of Decedent's death. She was employed by CDCR as a correctional officer at CSP-Sacramento at all times relevant to this complaint. She was among the first responders on scene after Decedent was discovered in his cell after committing suicide. Defendant VUE is being sued in her individual capacity in the federal claims and negligence/wrongful death claim and sued in her individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

17.   The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 2, 3, 4, 5 and 10, inclusive, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the defendants designated herein as DOES 2, 3, 4, 5, and 10 is responsible in some manner for the events and happenings referred to herein and was a substantial factor in causing injury and damages proximately thereby to Decedent and Plaintiffs, as herein alleged. Plaintiffs are informed and believe and thereon allege that DOES 2, 3, 4, 5 and 10 were correctional officers,

1   supervisors, or members of the medical or mental health staff at

2   CSP-Sacramento.

3       18.   Plaintiffs are informed and believe and thereon allege

4   that all times herein mentioned, each of the defendants was the

5   agent and/or employee and/or conspirator of each of the remaining

6   defendants, and in doing the things herein alleged, was acting

7   within the scope of such agency, employment, and/or conspiracy,

8   and with the permission and consent of the other co-defendants.

9   **COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT**

10      19.   Plaintiff M.B. III timely filed a Government Claim Form

11  with the STATE OF CALIFORNIA on May 10, 2017. The Government

12  Claim was denied by operation of law. *See* California Government

13  Code § 912.4(c). The claim was filed against the state agencies

14  and employees whose names were known to Plaintiffs at the time of

15  filing the Government Claim Form.

16  **GENERAL ALLEGATIONS**

17      20.   Each paragraph of this Third Amended Complaint is

18  expressly incorporated into each cause of action which is a part

19  of this Third Amended Complaint.

20      21.   All defendants' acts and omissions were engaged in

21  maliciously, callously, oppressively, wantonly, recklessly, and

22  with deliberate indifference to the rights of Decedent and

23  Plaintiffs.

24      22.   Milton Beverly, Jr. (Decedent), Plaintiff M.B. III's

25  father and Plaintiff TWYLLER WEARY'S son, had been charged with

26  various crimes. He was convicted and while in custody in the

27  County of Los Angeles, prior to his sentencing, he attempted

28  suicide. He was placed on suicide precautions at that time by the

1  County of Los Angeles.

2      23.   Subsequently, Decedent was sentenced and transferred to

3  Vacaville Mental Health Facility where he was supervised with

4  suicide precautions.

5      24.   Decedent was subsequently transferred to North Kern

6  State Prison in Delano, California. North Kern is a state prison

7  within the CDCR. While a prisoner at North Kern, Decedent again

8  attempted suicide. On or about April 11, 2016, Decedent was

9  transferred from North Kern State Prison to California Medical

10  Facility. He was placed in an Enhanced Outpatient Program for

11  mental health care.

12      25.   Decedent was subsequently transferred to CSP-Sacramento

13  on or around June 2, 2016. During the time Decedent was at CSP-

14  Sacramento, Decedent showed signs and symptoms of suicidal

15  ideation and behavior establishing that Decedent needed immediate

16  medical care to protect against this substantial suicide risk. In

17  October 2016, Decedent's sister attempted several times to reach

18  CSP-Sacramento personnel by telephone and received no response.

19  In a letter dated November 1, 2016, Decedent's sister notified

20  CSP-Sacramento personnel in writing that she feared Decedent's

21  condition was getting worse.

22      26.   Despite the suicidal signs and symptoms and the

23  warnings of Decedent's family members, Decedent was provided with

24  neither proper medical and supervisory care nor appropriate

25  suicide precautions. Further, the personnel assigned to perform

26  periodic "cell checks" on Decedent's prison cell failed to

27  perform said cell checks every hour, as required by prison policy

28  and procedures. On information and belief, Plaintiffs allege that

written policy, procedure, and practice require that correctional officers personally observe inmates on a regular schedule and not less than once per hour. Suicidal inmates should be observed more frequently.

27.   On or about November 24, 2016, Decedent was successful in committing suicide. That day, prison personnel including Defendants MANES, MOHR, BALLARD, MUNROE, VUE, and DOES 2, 3, 4, 5, and 10, failed to perform a "cell check" on Decedent's cell between approximately 0700 hours and when Decedent was discovered "Man Down" at or around 1015 hours. On information and belief, this failure to perform a "cell check" on Decedent left Decedent, a suicidal and depressed inmate, unsupervised for a period of time long enough for Decedent to successfully commit suicide by asphyxiation.

28.   Plaintiffs are informed and believe and thereon state that at all times relevant hereto, the personnel connected with the CDCR, including the personnel at CSP-Sacramento, knew or in the existence of reasonable care should have known that Decedent was a suicide risk, as Decedent had attempted suicide on at least two prior occasions while in custody, including while in custody at a CDCR facility.

29.   Once Decedent was transferred to CSP-Sacramento, despite the fact that Decedent was showing signs and symptoms of ongoing suicidal ideation and behavior demonstrating that Decedent was at an immediate suicide risk, defendants failed to exercise proper suicide precautions such that Decedent was able to commit suicide as alleged. Further, Decedent was not prescribed or administered proper and indicated antidepressant

1  medication.

2      30.   Based on this, Plaintiffs contend that the agents and

3  employees of the CDCR failed in their statutory duties under both

4  California and Federal law, including but not limited to

5  violations of the Eighth and Fourteenth Amendments of the United

6  States Constitution, by failing to provide adequate mental health

7  services and adequate protection to Decedent, thereby depriving

8  Decedent and Plaintiffs of their civil rights. Moreover,

9  Defendant CDCR and its employees knew and/or had reason to know

10 that Decedent was in immediate need of medical and other

11 appropriate supervisory care, yet Defendant CDCR and its

12 employees failed to take reasonable action to summon such care in

13 order to protect against Decedent's attempted suicide.

14          **PARTICIPATION, STATE OF MIND, AND DAMAGES**

15     31.   All defendants acted without authorization of law.

16     32.   Each defendant participated in the violations herein

17 alleged, or directed the violations herein alleged, or knew of

18 the violations herein alleged, and failed to act to prevent them.

19 Each defendant ratified, approved, or acquiesced in the

20 violations herein alleged.

21     33.   As joint actors with joint obligations, each defendant

22 was and is responsible for the failures and omissions of the

23 other.

24     34.   Each defendant acted individually and in concert with

25 the other defendants and others not named in violating Decedent's

26 and Plaintiffs' rights.

27     35.   As a direct and proximate result of the aforesaid acts,

28 omissions, customs, practices, policies, and decisions of the

defendants, Decedent suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life during the period of time in which CDCR failed to provide appropriate psychiatric care and treatment for Decedent's urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering the hours preceding his suicide on November 24, 2016.

36.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in an amount to be determined at trial.

37.   Due to the acts of the defendants, Plaintiffs have suffered and continue to suffer, and are likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, plaintiffs will incur significant damages based on psychological and medical care.

38.   As a further result of the conduct of each of the defendants, Plaintiffs have been deprived of familial relationships, including the loss of Decedent Milton Beverly, Jr., Plaintiff M.B. III's father and Plaintiff TWYLLER WEARY'S son, and the emotional impact on their family unit as a whole.

39.   The aforesaid acts of all defendants except for CDCR were willful, wanton, malicious, oppressive, in bad faith, and done with reckless disregard or with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, entitling

1   Plaintiffs to exemplary and punitive damages in an amount to

2   proven at the trial of this matter.

3       40.   By reason of the above described acts and omissions of

4   all defendants, Plaintiffs were required to retain an attorney to

5   institute and prosecute the within action, and to render legal

6   assistance to Plaintiffs so that they might vindicate the loss

7   and impairment of their rights. By reason thereof, Plaintiffs

8   request payment by defendants of a reasonable sum for attorney's

9   fees, pursuant to 42 U.S.C. § 1988, California Code of Civil

10  Procedure § 1021.5, and any other applicable provision of law.

11                      **FIRST CAUSE OF ACTION**

12                   **Violation of 42 U.S.C. § 1983**

13                  **Eighth and Fourteenth Amendments**

14                    **Deliberate Indifference**

15  *By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on*

16   *Behalf of the Estate of Milton Beverly, Jr., Against Defendants*

17  *BAUGHMAN, MANES, MOHR, BALLARD, MUNROE, VUE, and DOES 2, 3, 4, 5,*

18               *and 10 in their Individual Capacities*

19       41.   Plaintiffs re-allege and incorporate by reference the

20  preceding paragraphs as though fully set forth herein.

21       42.   As set forth above, Decedent was subjected to

22  deprivation of rights by defendants, acting or pretending to act

23  under color of law and of statutes, ordinances, regulations,

24  customs, and usages of the law of the United States, State of

25  California, and/or of the County of Sacramento, which rights

26  include, but are not limited to, privileges and immunities

27  secured to Plaintiffs by the United States Constitution and the

28  laws of the United States. By reason of the aforementioned acts,

these defendants have violated the Constitutional rights and liberty interest of Decedent and each Plaintiff, including those rights provided for in the Eighth and Fourteenth Amendments to the United States Constitution, as well as those rights which are protected under the Fourteenth Amendment's prohibition against depriving a person of a right to family relationship without due process of law.

43.   Plaintiffs are informed and believe, and based on such information and belief, allege that the defendants acted with deliberate indifference to Decedent's serious medical needs and safety.

44.   At all times mentioned herein, defendants knew, or had reason to know, of Decedent's serious medical, physical, and mental health conditions because of Decedent's prior suicide attempts while in custody, his past participation in the CDCR's Mental Health Service Delivery System, and his past placement in a segregated unit because he presented an immediate threat to his own safety. Prior to Decedent's death, defendants were deliberately indifferent to these serious medical, physical, and mental health conditions, or ignored them. Defendants also failed to provide access to and delivery of adequate medical or mental health intervention, care, and attention. Defendants also failed to perform regularly scheduled personal observation of Decedent in the form of "cell checks."

45.   Decedent was subjected to deprivation of rights by these defendants, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of the United States, State of California, and County of Sacramento,

which rights included but are not limited to privileges and
immunities secured to Decedent by the Fourteenth or Eighth
Amendments to the United States Constitution and laws of the
United States, particularly (a) his right to access mental health
and medical care and treatment for his serious but treatable
condition; (b) his right to adequate, reasonable security,
monitoring, supervision, classification and housing for this
mental health and medical disabilities, each of which was also a
cause of his serious injury and harm.

46.   Defendants were responsible for the promulgation of the
policies and procedures, and allowance of the practices/customs,
pursuant to which the acts of the employees of the CDCR alleged
herein were committed. These defendants had ongoing knowledge
that the California prison system failed to provide adequate
medical care to its mentally ill and medically compromised inmate
population and knew that these conditions created a significant
risk of substantial harm to persons similarly situated to
Decedent. These Defendants disregarded that risk by failing to
take reasonable steps to avoid the risk. These defendants were
deliberately indifferent to the lack of adequate mental health
care services, creating an immediate risk to inmate health and
safety, particularly for suicidal inmates such as Decedent.

47.   Defendants, at all times relevant to this Third Amended
Complaint, were aware that at CSP-Sacramento there was
insufficient direct supervision of mentally ill inmates,
including Decedent and others similarly situated. These
defendants knew that Decedent and others similarly situated
required direct supervision to protect their physical safety, and

to protect the mentally ill inmate population from each other and from themselves. Defendants disregarded that risk to inmate physical safety by allowing for insufficient direct supervision of mentally ill inmates at CSP-Sacramento. Plaintiffs are informed and believe and thereon allege that defendants were aware through the reports of their subordinates, through participation in prior civil rights litigation, and/or through internal investigation and studies that there was an excessive risk to inmate health or safety where suicidal inmates were not being provided adequate medical and mental health screening, direct supervision, and provision of medical and mental health services.

48. Plaintiffs allege that defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love, and society of their father and son, all to their damage in an amount to be proven at trial.

49. By virtue of the provisions of 42 U.S.C. § 1988, Plaintiffs are entitled to and demand an award of reasonable attorneys' fees and costs according to proof.

50. Each individual defendant acted recklessly or with callous indifference to Decedent's life-threatening physical, medical, and/or psychiatric condition and Plaintiffs' constitutional rights, and should be assessed punitive damages. These acts include failing to provide adequate or indicated mental or medical health care and failing to supervise and monitor Decedent so as to prevent him from harming himself.

///

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Eighth and Fourteenth Amendments**

**Supervisory Liability for Policy, Custom, or Practice Causing**

**Constitutional Violations**

*By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on*

*behalf of the Estate of Milton Beverly, Jr., Against Defendants*

*BAUGHMAN, MANES, and DOES 2, 3, 4, 5 and 10 in Their Individual*

*Capacities*

51.  Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though set forth fully herein.

52.  Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, defendants, with deliberate indifference and conscious and reckless disregard for the safety, security, and constitutional and statutory rights of Decedent, engaged in the unconstitutional conduct and omissions as specifically elaborated above.

53.  Defendants were responsible for the promulgation of the policies and procedures, and allowance of the practices/customs, pursuant to which the acts of the employees of the CDCR alleged herein were committed. These defendants had ongoing knowledge that the California prison system failed to provide adequate medical care to its mentally ill and medically compromised inmate population and knew that these conditions created a significant risk of substantial harm to persons similarly situated to Decedent. These defendants disregarded that risk by failing to take reasonable steps to avoid the risk. These defendants were

deliberately indifferent to the lack of adequate mental health care services, creating an immediate risk to inmate health and safety, particularly for suicidal inmates such as Decedent.

54.   Defendants, at all times relevant to this Third Amended Complaint, were aware that at CSP-Sacramento there was insufficient direct supervision of mentally ill inmates, including Decedent and others similarly situated. These defendants knew that Decedent and others similarly situated required direct supervision to protect their physical safety, and to protect the mentally ill inmate population from each other and from themselves. Defendants disregarded that risk to inmate physical safety by allowing for insufficient direct supervision of mentally ill inmates at CSP-Sacramento.

55.   Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, the defendants, with deliberate and/or conscious or reckless disregard for the safety and constitutional rights of Decedent and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied unconstitutional policies, practices and customs including, but not limited to:

a. Failure to provide adequate mental health services;

b. Failure to mitigate or eliminate known environmental suicide hazards prevalent throughout jail housing areas, including housing areas to which inmates with serious mental illnesses are assigned;

c. Failure to provide appropriate custodial supervision of inmates with mental health conditions, despite known

1      suicide hazards;

2         d. Failure to ensure that mental health housing and

3           treatment spaces met minimum safety design standards

4           for facilities in which persons with serious mental

5           illnesses are held;

6         e. Failure to ensure sufficient treatment space and

7           staffing necessary to provide adequate mental

8           healthcare;

9         f. Inadequate intake screening and assessment for housing

10          placement;

11        g. Inadequate monitoring and assessment of inmates' mental

12          health conditions;

13        h. Insufficient mechanisms to ensure communication of

14          relevant information between custodial, medical, and

15          mental health staff;

16        i. Failure to ensure appropriate suicide intervention

17          measures; and

18        j. Failure to ensure adequate training of correctional

19          staff in suicide prevention and responding to mental

20          healthcare crises.

21        56.  Plaintiffs are informed and believe and thereon allege

22     that at all times herein mentioned, the individual defendants'

23     wrongful conduct was the result of policies, practices, and

24     customs that had the effect of providing inmates of Defendant

25     CDCR with mental health conditions unconstitutionally inadequate

26     treatment; permitting and promoting unsafe conditions for inmates

27     leading to a heightened risk of suicide; and covering up

28     incidents of unconstitutional behavior by members of the custody

staff of Defendant CDCR.

57.   Each aforementioned policy, custom, or practice posed a substantial risk of serious harm to Decedent and each defendant knew, or in the exercise of reasonable care should have known, that these policies, customs or practices posed this risk.

58.   The actions of Defendants set forth herein were a motivating force behind the violations of Plaintiffs' and Decedent's constitutional rights as set forth in this Third Amended Complaint. As supervisors, Defendants BAUGHMAN, MANES, and DOES 2, 3, 4, 5, and 10 knew, or should have known, from the reports of their subordinates, that the policies, customs, and/or practices as stated above provided inadequate security, monitoring, supervision, classification and housing for this Decedent, who had known mental health and medical disabilities. Those policies, customs, and practices caused the violations of Plaintiffs' and Decedent's constitutional rights as set forth herein.

59.   As a direct and proximate result of the aforementioned policies, practices, and customs, Plaintiffs sustained injuries and damages as alleged herein.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Supervisory Liability for Negligent Hiring and Failure to Train and Supervise Causing Constitutional Violations**

*By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on Behalf of the Estate of Milton Beverly, Jr., Against Defendants BAUGHMAN, MANES, and DOES 2, 3, 4, 5, and 10 in Their Individual Capacities*

60.   Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though fully set forth herein.

61.   Plaintiffs are informed and believe and thereon allege that Defendants knew, or in the exercise of reasonable care should have known, of a history and propensity and pattern at the time of this incident for employees of Defendant CDCR to fail to provide reasonable security, monitoring, and supervision of inmates such as Decedent; to fail to train and ensure that deputies, employees, and medical care providers provide reasonable security and monitoring and supervision of inmates such as Decedent; and that they provide prompt and competent access to and delivery of mental health attention and intervention when inmates such as Decedent were having a mental health crisis requiring prompt investigation. The defendants' disregard of this knowledge or failure to adequately investigate and discovery and correct such acts or failure to act was a moving force which caused the violation of Decedent's and Plaintiffs' constitutional rights.

62.   Plaintiffs are further informed and believe and thereon allege that the defendants knew, or in the exercise of reasonable care should have known, of such prior history and propensity at the time such individuals were hired and/or during the time of their employment. The defendants' disregard of this knowledge and/or failure to adequately investigate and discover and correct such facts caused the violation of Plaintiffs' constitutional rights.

63.   Plaintiffs are informed and believe and thereon allege

that prior to the incident alleged herein, Defendants, acting under color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff, and mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

     a. Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Defendant CDCR with known mental disabilities;

     b. Failure to provide adequate housing and properly classify inmates in the CDCR so that they would have access to and delivery of indicated mental health and medical care;

     c. Failure to provide adequate and reasonable monitoring and housing for inmates that present risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

     d. Failure to supervise their subordinates to ensure that staff, deputies, and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates; and

     e. Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

     64.   Plaintiffs are further informed and believe and thereon allege that defendants knew or in the exercise of reasonable care

should have known of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these defendants and DOES 2, 3, 4, 5, and 10 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate, or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians, and nurses who had a history of inappropriate conduct, and as a result Decedent was harmed in the manner threatened by the pattern of practice.

65.   At all times herein mentioned, and prior thereto, the defendants had the duty to perform the following, and violated that duty:

      a. To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

      b. To objectively investigate incidents of in-custody injury, deaths, suicides, suicide attempts, inadequate classification, and contraindicated housing, and to take remedial action;

      c. To provide access to and delivery of mental and medical healthcare, intervention, treatment, follow-up, and attention to injured, ill, or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access to and delivery of competent mental and medical healthcare;

d. To periodically monitor an inmate's serious mental
   health and medical condition and suicide prevention,
   the lack of which may result in serious injury or loss
   of life;

e. To periodically monitor the quality and adequacy of
   mental health and medical care, attention, and
   treatment provided to mentally ill inmates;

f. To periodically monitor the competency of medical and
   custodial staffing to ensure that custodial deputies
   and staff were complying with reasonable security to
   inmates with mental health disabilities at Defendant
   CDCR;

g. To periodically monitor the classification and hosing
   of mentally ill inmates to ensure they have reasonable
   security and safety and are properly house, and not
   housed with or exposed to persons with known dangerous
   propensities;

h. To comply with the statutory guidelines and regulations
   enacted for the protection of inmates held in a
   custodial setting;

i. To discipline and establish procedures to correct past
   violations, and to prevent future violations of
   constitutional rights of inmates, by not condoning,
   ratifying, and/or encouraging the violation of
   Decedent's and other inmates' constitutional rights.;

j. To periodically train custodial staff and counselors on
   understanding, recognizing, report, and responding to
   issues of inmates' mental healthcare and treatment; and

k. Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

66.  As a result of the conduct of defendants, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

**FOURTH CAUSE OF ACTION**

**Negligence – Wrongful Death**

*By Plaintiff M.B. III, Individually, Against Defendant CDCR and Against Defendants BAUGHMAN, MANES, MOHR, BALLARD, MUNROE, VUE, and Does 2, 3, 4, 5, and 10, in Their Individual Capacities*

67.  Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though fully set forth herein.

68.  Defendants had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment, and/or emergency services to Decedent for his mental health condition. This includes the failure to provide antidepressant medication and/or other proper mental health treatment and therapy. Defendants and Does 2, 3, 4, 5, and 10 breached their duty and were negligent in the performance of their duties, and this negligence caused the death of Decedent.

69.  Defendants, acting within the course and scope of their employment, had a duty to assure the competence of their employee/agents. Defendants and Does 2, 3, 4, 5, and 10 breached their duty and were negligent in the performance of their duties

by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians, employees, and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors, and other staff created an unreasonable risk of harm to persons such as Decedent.

70.  The individually named defendants breached their duty of care to observe, report, monitor, and provide reasonable security regarding Decedent's condition, and failed to prevent his suicide.

71.  As a direct and legal result of the aforesaid negligence, carelessness, and unskillfulness of defendants, and each of them, and as a result of their breach of duty of care to Decedent, he was injured due to a serious but treatable mental health condition, and Plaintiffs have suffered damages as alleged above.

72.  Specifically, Defendants BAUGHMAN and MANES were aware, through their knowledge of the policies and procedures applicable to mentally ill inmates at CSP-Sacramento, their own observation, and/or the reports of their subordinates, of the need for adequate supervision, classification, and staffing at CDCR facilities to timely refer suicidal inmates, like Decedent, for medical, psychiatric, psychological, and/or hospital care. Despite this knowledge, they failed to implement a policy providing adequate supervision, classification, and staffing levels to provide observation and ongoing medical care to

suicidal inmates.

73.   The CDCR, BAUGHMAN, MANES, and DOES 2, 3, 4, 5, and 10, including agents and employees of other defendants, failed to conduct appropriate investigatory procedures to determine the need to obtain medical and psychiatric services for Decedent while Decedent was in the defendants' care, custody, and control.

74.   As a direct and legal consequence of the aforesaid negligence, carelessness, and unskillfulness of the defendants, and each of them, Decedent's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate, and indicated intervention and treatment. His condition worsened and resulted in his suicide. He suffered serious injury and harm proximately caused by the negligent conduct of Defendants. As a result of defendants' breach of duty of care to Decedent, Decedent was injured as a result of a serious but treatable mental health condition, and Plaintiff M.B. III has suffered the damages as alleged herein.

**FIFTH CAUSE OF ACTION**

**California Government Code §§ 844.6 and 845.6**

**Failure to Summon Medical Care**

*By Plaintiff M.B. III, Individually, Against Defendant CDCR and Against Defendants BAUGHMAN, MANES, MOHR, BALLARD, VUE, MUNROE, and Does 2, 3, 4, 5, and 10 in Their Individual and Official Capacities*

75.   Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though fully set forth herein.

76.   Defendants knew or had reason to know that Decedent

needed immediate medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have his mental and medical condition monitored. Defendants' failure to provide immediate medical care in the form of adequate monitoring and mental health care, where Decedent's health and mental condition were deteriorating, proximately caused Decedent's suicide.

77.   Pursuant to California Government Code §§ 844.6 and 845.6, the defendants had a duty to monitor, check, and respond to the persons under their custody, supervision, and control. Defendants knew or had reason to know that Decedent needed physical and mental healthcare and treatment while incarcerated at CSP-Sacramento and failed to take reasonable action to summon or provide such care. They knew or had reason to know of the need for intensive medical care for Decedent because of his recent prior suicide attempts while in custody, his participation in the Mental Health Service Delivery System, and the documentation in records available to and generated by the CDCR of Decedent's being an immediate threat to his own safety.

78.   The individuals at CSP-Sacramento who monitored, supervised, treated, and administered Decedent as an inmate at the prison, and who reported to the chain of command including supervisors like Defendants BAUGHMAN and MANES were in a position to know of Decedent's need for medical care.

79.   Defendants' knowledge of Decedent's obvious mental and medical conditions put the staff at CSP-Sacramento on notice that Decedent should have had his medical condition closely monitored, that he should have been prevented from unsupervised time alone,

1  and that on or before November 24, 2016, he needed immediate

2  medical care and mental healthcare, where his health and mental

3  condition were deteriorating, and the lack of which proximately

4  caused his suicide.

5       80.   Nevertheless, these individuals were not properly

6  trained or supervised so as to provide the immediate medical care

7  that was necessary to save Decedent's life, and did not provide

8  the close monitoring, supervision and/or medical and mental

9  healthcare that they had a duty to provide. This includes the

10  failure to provide antidepressant medication or other therapies

11  and interventions indicated by the patient's medical history

12  known to the staff of CSP-Sacramento.

13                     **PRAYER FOR RELIEF**

14       Wherefore, Plaintiffs request relief on their own behalf and

15  on behalf of the Estate of MILTON BEVERLY, JR., as follows,

16  against each defendant:

17       1.   General and compensatory damages in an amount according

18            to proof;

19       2.   Special damages in an amount according to proof;

20       3.   Exemplary and punitive damages in an amount according

21            to proof against each defendant except defendant CDCR;

22       4.   Other losses in an amount according to proof;

23       5.   Costs of suit;

24       6.   Attorneys' fees, under 42 U.S.C. § 1988, 42 U.S.C. §

25            12205, 29 U.S.C. § 794a(b), California Civil Code §§ 52

26            and 52.1, California Code of Civil Procedure § 1021.5,

27            and/or any other applicable provision of law; and

28  ///

1          7.    Such other relief as may be warranted or as is just and

2                proper.

3

4    Dated:   June 6, 2018                THE SWEENEY FIRM

5                                         and

6                                         GLICKMAN & GLICKMAN
                                          A LAW CORPORATION
7

8                                         */s/ Nicole E. Hoikka*

9                                         STEVEN C. GLICKMAN
                                          NICOLE E. HOIKKA
10                                        Attorneys for Plaintiffs

11

12                          **JURY TRIAL DEMAND**

13          Plaintiffs hereby demand trial by jury in this case.

14

15

16   Dated:   June 6, 2018                THE SWEENEY FIRM

17                                        and

18                                        GLICKMAN & GLICKMAN
                                          A LAW CORPORATION
19

20                                        */s/ Nicole E. Hoikka*

21                                        STEVEN C. GLICKMAN
                                          NICOLE E. HOIKKA
22                                        Attorneys for Plaintiffs

23

24

25

26

27

28

---

THIRD AMENDED COMPLAINT FOR DAMAGES

# EXHIBIT "1"

1  Steven C. Glickman, Esq. (SBN 105436)
   Nicole E. Hoikka, Esq. (SBN 306324)
2  GLICKMAN & GLICKMAN,
   A LAW CORPORATION
3  9460 Wilshire Boulevard, Suite 330
   Beverly Hills, CA 90212-2732
4  Tel: (310) 273-4040

5  John E.Sweeney, Esq. (SBN 116285)
   THE SWEENEY FIRM
6  315 S. Beverly Drive, Suite 305
   Beverly Hills, CA 90212
7  Tel: (310) 277-9595

8  Attorneys for Plaintiffs M.B. III, etc., et al.

9
                    UNITED STATES DISTRICT COURT
10
                    EASTERN DISTRICT OF CALIFORNIA
11
                        SACRAMENTO DIVISION
12

13  M.B. III, a minor, by and through his      ) CASE NO. 2:17-cv-02395-WBS-DB
    Guardian Ad Litem, TITICE BEVERLY,         )
14  individually and as Successor in Interest and ) **DECLARATION OF TITICE BEVERLY**
    Personal Representative of the Estate of    ) **PURSUANT TO CALIFORNIA CODE OF**
15  Milton Beverly, Jr.; TWYLLER WEARY,        ) **CIVIL PROCEDURE §377.32**
    individually and as Successor in Interest and )
16  Personal Representative of the Estate of    )
    Milton Beverly, Jr.,                        )
17                                              )
                    Plaintiffs,                 )
18                                              )
                vs.                             )
19                                              )
    CALIFORNIA DEPARTMENT OF                    )
20  CORRECTIONS AND REHABILITATION,            )
    et al.,                                     )
21                                              )
                    Defendants.                 )
22  _____ )

23

24

25

26

27

28                              1
    ─────────────────────────────────────────────────
              DECLARATION OF TITICE BEVERLY
    PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

**DECLARATION OF TITICE BEVERLY**

1.     This declaration is made pursuant to California Code of Civil Procedure §377.32.

2.     I am the proposed guardian ad Litem for Plaintiff M█████ B████████, III, who has a superior interest in this action and the sister of decedent MILTON BEVERLY, JR. (hereinafter "Decedent"). If called upon to testify in this matter, I could and would competently testify to the following facts as they are within my personal knowledge.

3.     Defendant STATE OF CALIFORNIA is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION was, at all times herein alleged, an agency of the STATE OF CALIFORNIA. At all times herein mentioned, the California Secretary of the Department of Corrections and Rehabilitation was SCOTT KERNAN. Defendant EDMUND G. BROWN, JR., at all times herein mentioned, was the Governor of the State of California.

4.     The date and place of Decedent's death is November 24, 2016 at California State Prison.

5.     No proceeding is now pending in California for administration of Decedent's estate.

6.     Plaintiff TWYLLER WEARY and I, as the proposed Guardian ad Litem for M█████ B████████, III, are the Decedent's successors-in-interest (as defined in California Code of Civil Procedure §377.11) and succeed to the Decedent's interest in this action.

7.     Other than co-plaintiff TWYLLER WEARY, no other persons have a superior right to commence this action or proceeding or to be substituted for the Decedent in this pending action.

8.     A copy of the Sacramento County Coroner's Report regarding Decedent's

2

1  death is attached hereto and incorporated herein as Exhibit A.

2      I declare under penalty of perjury under the laws of the State of California and

3  the United States of America that the foregoing is true and correct.

4      Executed this 7 day of November, 2017 at Los Angeles, California.

6  By: *Titice Beverly*

7      TITICE BEVERLY
    Proposed Guardian ad Litem for

8      M███ B███, III, a minor

3

DECLARATION OF TITICE BEVERLY
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

EXHIBIT "A"



**SACRAMENTO COUNTY**
**CORONER**

| CLASSIFICATION | 1 Final Classification<br>Suicide | | 2 Case No.<br>16-05715 | | 3 Deputy Assigned<br>Maria Vargas | | 4a Date of Death<br>11/24/2016 | 4b Found? |
|---|---|---|---|---|---|---|---|---|
| **DECEDENT**<br>**PERSONAL DATA** | 5 Name First:<br>Milton | | 6 Name Middle: | | 7 Name Last:<br>Beverly | | 8a Time of Death<br>10:45 | 8b Fnd/Est/Unk: |
| | 9 Sex<br>Male | 10 Race<br>African American | | | 11 Date of Birth<br>8/26/1987 | 12 Age<br>29 Years | 13 Marital Status<br>Divorced | |
| **RESIDENCE** | 14 Usual Address<br>300 Prison Rd | | | | | | | |
| | 15 City<br>Represa | | | 16 County<br>Sacramento | | 16a State<br>CA | 17 Zip Code<br>95671 | |
| **IDENTIFICATION** | 18 Remains identified by or how identified<br>VARGAS, Maria                    Fingerprints | | | | | | | |
| **RELATIVES** | WEARY, Twyller                    Mother | | | | | | | |
| **PLACE OF DEATH** | 21 Place of Death<br>Folsom State Prison | | | | | | | |
| | 22 Street Address<br>300 Prison Rd | | | | | | | |
| | 23 City<br>Represa | | | 24 County<br>Sacramento | | | 25 Zip<br>95671 | |
| **REMAINS** | 26 Death Reported By<br>KUKRALL | | | 27 Removed To Coroner<br>Yes | | 28 Type of Medical Examination<br>Full Autopsy | | |
| **CAUSE OF DEATH** | 29 Cause    Asphyxia<br><br>due to:    Neck Compression<br><br>due to:<br><br>due to; | | | | | | | |
| **OTHER**<br>**SIGNIFICANT**<br>**CONDITIONS** | 30   None | | | | | | | |
| **INJURY**<br>**INFORMATION** | 31 Manner of Death<br>Suicide | 32 Place of Injury<br>Folsom State Prison | | 33 At Work?<br>No | 34a Date of Injury<br>11/24/2016 | | 34b Fnd/Est/Unk | |
| | 35 Address or Location<br>300 Prison Rd | | | | 36a Time of Injury | | 36b Fnd/Est/Unk<br>Unk. | |
| | 37 City<br>Represa | | | 38 County<br>Sacramento | | | 39 Zip Code<br>95671 | |
| | 40 Describe how<br>injury occurred    Decedent hanged himself in his cell. | | | | | | | |
| **CASE SUMMARY** | See Page 2 | | | | | | | |

Deputy   <u>Maria Vargas</u>                    Date Signed   5/1/2017



**SACRAMENTO COUNTY
CORONER**

**Final Case Summary**

On 11/24/2016, the Sacramento County Coroner's Office received a report of the decedent's death from California Department of Corrections IA. As required by Government Code, Section 27491, an inquiry was made into the death. The decedent was removed to this office where an examination was performed by Jason P. Tovar, M.D.. The cause of death was determined to be:

      Asphyxia

Due To:  Neck Compression

Other Significant Conditions:  None

Decedent was a 29 year old male with no known suicidal ideation that was found hanging in his cell. The decedent was alone in the cell when the incident occurred. No evidence of foul play or a struggle was noted on scene. He had recently requested a mental health appointment but was not known to be suicidal. His complaints at the mental health appointment were anxiety attacks, worsening voices, and insomnia. He did not alert anyone that he was suicidal. On the day of his death, he refused his medications. He also refused to leave his cell when everyone was released for free time outdoors. The decedent was alone in the cell for approximately two and a half hours. An autopsy was done on the body. No suspicious markings were noted on the body at time of autopsy. Toxicology was negative for alcohol and drugs of abuse.

Based on the circumstances and cause of death, the manner will be listed as Suicide.

EXHIBIT "2"

1  Steven C. Glickman, Esq. (SBN 105436)
   Nicole E. Hoikka, Esq. (SBN 306324)
2  GLICKMAN & GLICKMAN,
   A LAW CORPORATION
3  9460 Wilshire Boulevard, Suite 330
   Beverly Hills, CA 90212-2732
4  Tel: (310) 273-4040

5  John E.Sweeney, Esq. (SBN 116285)
   THE SWEENEY FIRM
6  315 S. Beverly Drive, Suite 305
   Beverly Hills, CA 90212
7  Tel: (310) 277-9595

8  Attorneys for Plaintiffs M.B. III, etc., et al.

9
                    UNITED STATES DISTRICT COURT
10
                   EASTERN DISTRICT OF CALIFORNIA
11
                        SACRAMENTO DIVISION
12

13  M.B. III, a minor, by and through his          )  CASE NO. 2:17-cv-02395-WBS-DB
    Guardian Ad Litem, TITICE BEVERLY,             )
14  individually and as Successor in Interest and  )  **DECLARATION OF TWYLLER WEARY**
    Personal Representative of the Estate of       )  **PURSUANT TO CALIFORNIA CODE OF**
15  Milton Beverly, Jr.; TWYLLER WEARY,            )  **CIVIL PROCEDURE §377.32**
    individually and as Successor in Interest and  )
16  Personal Representative of the Estate of        )
    Milton Beverly, Jr.,                           )
17                                                  )
                    Plaintiffs,                     )
18                                                  )
                    vs.                             )
19                                                  )
    CALIFORNIA DEPARTMENT OF                        )
20  CORRECTIONS AND REHABILITATION,                 )
    et al.,                                         )
21                                                  )
                    Defendants.                     )
22  _____        )

23

24

25

26

27

28                                1

    _____
                  DECLARATION OF TITICE BEVERLY
        PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

### DECLARATION OF TWYLLER WEARY

1.    This declaration is made pursuant to California Code of Civil Procedure §377.32.

2.    I am a Plaintiff with a superior interest in this action and the mother of decedent MILTON BEVERLY, JR. (hereinafter "Decedent"). If called upon to testify in this matter, I could and would competently testify to the following facts as they are within my personal knowledge.

3.    Defendant STATE OF CALIFORNIA is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION was, at all times herein alleged, an agency of the STATE OF CALIFORNIA. At all times herein mentioned, the California Secretary of the Department of Corrections and Rehabilitation was SCOTT KERNAN. Defendant EDMUND G. BROWN, JR., at all times herein mentioned, was the Governor of the State of California.

4.    The date and place of Decedent's death is November 24, 2016 at California State Prison.

5.    No proceeding is now pending in California for administration of Decedent's estate.

6.    Plaintiff M████ B████████, III a minor acting by and through his proposed Guardian ad Litem TITICE BEVERLY, and I are the Decedent's successors-in-interest (as defined in California Code of Civil Procedure §377.11) and succeed to the Decedent's interest in this action.

7.    No other persons have a superior right to commence this action or proceeding or to be substituted for the Decedent in this pending action.

8.    A copy of the Sacramento County Coroner's Report regarding Decedent's death is attached to the Declaration of TITICE BEVERLY submitted concurrently herewith, and is incorporated herein as Exhibit A.

2

1       I declare under penalty of perjury under the laws of the State of California and

2   the United States of America that the foregoing is true and correct.

3       Executed this 7 day of November, 2017 at Los Angeles, California.

4

5                     By: *Twyller Weary*

6                        TWYLLER WEARY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF TWYLLER WEARY
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32