UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

M.B. III, a minor, by and
through his Guardian Ad Litem,
TITICE BEVERLY, individually and
as Successor in Interest and
Personal Representative of the
Estate of MILTON BEVERLY, JR.,

         Plaintiffs,

    v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,
DAVID BAUGHMAN, individually and
in his official capacity as
Warden of California State
Prison-Sacramento; Sergeant TODD
MANNES, individually and in his
official capacity as a
correctional officer and
supervisor at California State
Prison-Sacramento; KYLE MOHR,
individually and in his official
capacity as a correctional
officer at California State
Prison-Sacramento; ANDREW
BALLARD, individually and in his
official capacity as a
correctional officer at
California State Prison-
Sacramento, MICHAEL MUNROE,
individually and in his official
capacity as a correctional

No.  2:17-cv-2395 WBS DB


ORDER RE: MOTION TO DISMISS

officer at California State-Prison Sacramento; STACY VUE, individually and in her official capacity as a correctional officer at California State Prison-Sacramento; and DOES 2, 3, 4, 5, and 10,

Defendants.

----ooOoo----

Plaintiffs M.B. III, a minor, by and through his guardian ad litem, Titice Beverly, bring this action against defendants California Department of Corrections and Rehabilitation ("CDCR"), Warden of California State Prison-Sacramento David Baughman ("Warden" or "Baughman"), correctional officer and supervisor at California State Prison-Sacramento ("SAC") Sergeant Todd Mannes, correctional officers at California State Prison-SAC Kyle Mohr, Andrew Ballard, and Stacy Vue arising from decedent Milton Beverly Jr.'s suicide while incarcerated at California State Prison-SAC. Before the court is CDCR's and Baughman's Motion to Dismiss portions of the Third Amended Complaint. (Docket No. 33).

I. Facts and Procedural Background

Milton Beverly Jr. ("decedent") was convicted of various crimes.[1] (Third Am. Compl. ("TAC") ¶ 22 (Docket No. 31).) Prior to sentencing and while in the custody of the County

---

[1] Plaintiff M.B. III is the biological son, successor in interest, and personal representative of the estate of his father, decedent. Plaintiff Twyller Weary is the mother, successor in interest, and personal representative of the estate of her son, decedent.

2

of Los Angeles, decedent attempted suicide.  (Id.)  Decedent was transferred to Vacaville Mental Health Facility where he was supervised with suicide precautions.  (Id. ¶ 23.)  Decedent was subsequently transferred to North Kern Prison in Delano, California, where he again attempted suicide.  (Id. ¶ 24.) Decedent was transferred from North Kern State Prison to a California Medical Facility where he was placed in an enhanced outpatient program for mental health care.  (Id.)  On June 2, 2016, Decedent was then transferred to California State Prison-SAC.  (Id. ¶ 23.)

Plaintiffs allege that while decedent was at California State Prison-SAC, decedent showed signs and symptoms of suicidal ideation and behavior.  (Id. ¶ 25.)  Plaintiffs allege that in October of 2016, decedent's sister attempted to reach California State Prison-SAC personnel by telephone and received no response.  (Id.)  In a letter dated November 1, 2016, decedent's sister notified California State Prison-SAC personnel that she feared decedent's condition was getting worse.  (Id.) Plaintiffs allege that while at California State Prison-SAC, decedent was not provided with proper medical care, supervision, or suicide precautions.  (Id. ¶ 26.)  Plaintiffs further allege that the personnel assigned to perform periodic "cell checks" on decedent's prison cell failed to perform these cell checks every hour, as required by prison policy or procedure.[2]  (Id.)

---

[2] Plaintiffs allege that written policy, procedure, and practice require that corrections officers personally observe inmates on a regular schedule and not less than once per hour, and that suicidal inmates should be observed more frequently. (Id.)

Plaintiffs also allege that decedent was not prescribed or administered antidepressant medication. (Id. ¶ 29.) On or about November 24, 2016, decedent committed suicide by asphyxiation. (Id. ¶ 27.)

On January 30, 2017 plaintiffs filed their First Amended Complaint alleging the following causes of action: (1) 42 U.S.C. § 1983 claim for violating the Eighth and Fourteenth Amendments, against defendants the State of California, CDCR, Governor Edmund G. Brown Jr. ("Brown"), Secretary of the CDCR Scott Kernan ("Kernan"), and Baughman; (2) Monell claim under 42 U.S.C. § 1983, against defendants Brown, Kernan, Baughman; (3) 42 U.S.C. § 1983 claim for negligent hiring and failure to train and supervise, against defendant CDCR and defendants Brown, Kernan, and Baughman; (4) negligence against all defendants; (5) violation of California Government Code §§ 844.6 and 845.6, against all defendants for failure to summon medical care; (6) violation of California Civil Code §§ 51 and 52.1, the California Unruh Act and Bane Act, against all defendants; (7) violation of 42 U.S.C. §§ 12101, et. seq., the Americans with Disabilities Act ("ADA"), against all defendants; and (8) violation of 29 U.S.C. § 794, the Rehabilitation Act ("Rehab Act"), against all defendants.

The court granted in part defendant Baughman, Brown, CDCR, Kernan's Motion to Dismiss Portions of the First Amended Complaint. (Docket No. 19.) The court dismissed the following claims: (1) all claims against defendant Brown; (2) the fourth, fifth, sixth, seventh, and eighth claims against defendants Kernan and Baughman; (3) the third, fourth, and sixth claims

4

against CDCR; (4) the fourth and sixth claims against the State of California; (5) the claims for injunctive relief; and (6) the claim for punitive damages. In all other respects, defendants' Motion to Dismiss was denied. The court permitted plaintiffs leave to amend to file an amended complaint.

On June 6, 2018, plaintiffs filed a Third Amended Complaint alleging the following causes of action: (1) 42 U.S.C. § 1983 claim for violating the Eighth and Fourteenth Amendments, against defendants Baughman, Manes, Mohr, Ballard, Munroe, and Vue; (2) supervisory liability based on customs, policies, and procedures under 42 U.S.C § 1983, against Baughman and Manes; (3) supervisory liability for negligent hiring and failure to train and supervise under 42 U.S.C § 1983, against Baughman and Manes; (4) negligence against all defendants; (5) violation of California Government Code §§ 844.6 and 845.6, against all defendants for failure to summon medical care.[3]

II. <u>Legal Standard</u>

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim to relief that is plausible on its face. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> "A claim has facial plausibility

---

[3] Plaintiffs no longer allege assert claims under the ADA, the Rehab Act, the Bane Act, or the Unruh Act. Additionally, plaintiffs no longer seek injunctive relief or punitive damages.

5

when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable for
the misconduct alleged." Id. "The issue is not whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims." Jackson v.
Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v.
Rhodes, 416 U.S. 232, 236 (1974)).

III. Discussion

Defendants CDCR and Baughman move to dismiss all claims
asserted against them in plaintiffs' Third Amended Complaint on
the following grounds: plaintiffs fail to allege sufficient facts
to state a section 1983 claim against Baughman; (2) plaintiffs'
state law claims against defendants, except for failure to summon
medical care against CDCR, are barred for failure to file a
timely and proper government claim; (3) plaintiffs' state law
claims fail to allege sufficient facts to state cognizable
claims; (4) Baughman is entitled to qualified immunity on
plaintiffs' federal causes of action; (5) CDCR and Baughman are
entitled to Eleventh Amendment immunity; and (6) plaintiffs'
state law claims are barred by statutory immunities.

A.   Section 1983 claims against Baughman

Plaintiffs allege Baughman is liable both as an
individual and as a supervisor for acting with deliberate
indifference towards the decedent's serious medical needs and
safety.[4]

---

[4]   The court notes that "state officers named in their
official capacities are immune from suits for damages in federal
court (for federal or state law claims) under the doctrine of
state sovereign immunity and the Eleventh Amendment, and are not

6

1       1. <u>First Claim: Individual Liability</u>

2           To state a claim under 42 U.S.C. § 1983 for a violation

3   of the Eighth Amendment based on inadequate medical care, "a

4   prisoner must allege acts or omissions sufficiently harmful to

5   evidence deliberate indifference to serious medical needs."

6   <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal quotations

7   omitted). "A heightened suicide risk or an attempted suicide is

8   a serious medical need." <u>Conn v. City of Reno</u>, 591 F.3d 1081,

9   1095 (9th Cir. 2010), <u>cert. granted</u>, <u>judgment vacated sub nom.</u>

10  <u>City of Reno, Nev. v. Conn</u>, 563 U.S. 915 (2011), and opinion

11  reinstated, 658 F.3d 897 (9th Cir. 2011). To be deliberately

12  indifferent, "[a] defendant must purposefully ignore or fail to

13  respond to a prisoner's pain or possible medical need." <u>McGuckin</u>

14  <u>v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992), <u>overruled on other</u>

15  <u>grounds by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir.

16  1997). "[T]he official must both be aware of facts from which

17  the inference could be drawn that a substantial risk of serious

18  harm exists, and he must also draw the inference." <u>Farmer v.</u>

19  <u>Brennan</u>, 511 U.S. 825, 837 (1994).

20          The Third Amended Complaint alleges that defendants

21  knew or had reason to know of the need for intensive medical care

22  for decedent because of decedent's prior suicide attempts while

23  in custody, including one which occurred while decedent was in

24  _____

25  'persons' subject to suit under 42 U.S.C. § 1983 (in federal or
    state court)." <u>Silverbrand v. Woodford</u>, No. 06-cv-3253-R(CW),

26  2010 WL 3635780, at *4 (C.D. Cal. Aug. 18, 2010) (citing <u>Hafer v.</u>
    <u>Melo</u>, 502 U.S. 21, 25 (1991)). Therefore, Baughman is not liable

27  and the court dismisses the section 1983 claims against him in
    his official capacity. The court proceeds with plaintiffs'

28  claims against Baughman in his individual capacity.

custody at a CDCR facility, his participation in the Mental

Health Service Delivery System, and his past placement in a

segregated unit.  (TAC ¶¶ 28, 44, 77.)  Plaintiffs further allege

that decedent's sister notified California State Prison-SAC in

writing that she feared decedent's condition was getting worse.

(Id. ¶ 25.)  Plaintiffs claim that Baughman was regularly

provided with reports concerning the treatment of mentally ill

inmates, jail suicides, and violations involving housing, care,

mental healthcare, and treatment of inmates at California State

Prison-SAC. (Id. ¶ 9).  Further, plaintiffs allege that

defendants had ongoing knowledge of California's prison system's

failure to provide medical care to the mentally ill.  (Id. ¶ 16.)

Under section 1983, plaintiffs must demonstrate that

each named defendant personally participated in the deprivation

of his rights.  See Henry A. v. Willden, 678 F.3d 991, 1005 (9th

Cir. 2012).  Here, plaintiffs' allegations state "defendants knew

or should have known" but contain no facts regarding what

Baughman specifically knew or should have known as compared to

other defendants.  Thus, "the complaint falls short in some

places [] tying its factual allegations to particular

defendants."  Id.  Furthermore, there are no allegations

regarding how Baughman would have learned about decedent's

previous suicide attempts or past placements.  Moreover,

plaintiffs do not allege that information about decedent was

contained in the records Baughman was provided with, nor do they

allege that Baughman personally learned about the decedent's

sister's communications with the prison.  Plaintiffs cannot

simply rely on the fact that Baughman was the warden at the

prison, and argue that because of his position Baughman was aware
or should have been aware that decedent was suicidal.  See Vega
v. Davis, 572 F. App'x 611, 618 (10th Cir. 2014) ("[I]t is not
plausible to infer that a warden is aware of everything that
happens to each inmate in his custody."); Sullivan v. Biter, No.
1:15-cv-243 DAD SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28,
2017) ("Conclusory allegations that various prison officials knew
or should have known about constitutional violations occurring
against plaintiff simply because of their general supervisory
role are insufficient to state a claim under 42 U.S.C. § 1983.").

Thus, plaintiffs' allegations are insufficient because
there are no facts to show that Baughman was aware of decedent's
specific medical needs or to establish how he was personally
involved in the constitutional deprivation.  Accordingly, the
court will dismiss plaintiffs' first cause of action against
Baughman.

2. Second and Third Claims: Supervisory Liability

Plaintiffs purport to hold Baughman liable under a
theory of supervisory liability for promulgating or failing to
promulgate proper polices, practices and customs and negligently
hiring and failing to train and supervise his subordinates.

A supervisor may be held liable under section 1983 "if
there exists either (1) his or her personal involvement in the
constitutional deprivation, or (2) a sufficient causal connection
between the supervisor's wrongful conduct and the constitutional
violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011)
(quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).  To
be liable, the supervisor's participation could include his "own

9

culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others."  Id. at 1205–06 (citing Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, plaintiffs allege that Baughman's affirmative conduct involves his knowing failure to ensure enforcement of the specific policies, rules, or directives that applied to decedent, which set in motion a series of acts that Baughman knew or reasonably should have known would cause others to inflict constitutional injuries on decedent.  (TAC ¶ 11.)  Plaintiffs allege that Baughman failed to enforce numerous policies and practices, including the policy that required correctional officers to personally observe inmates on a regular schedule and not less than once per hour, with suicidal inmates observed more frequently.  (Id. ¶ 26.)  As a result of the failure to enforce that policy, plaintiffs allege that decedent was unsupervised for more than three hours, a period of time long enough for decedent to commit suicide.  (Id. ¶ 27.)  Plaintiffs also allege that individuals who monitored decedent were not properly trained or supervised as to provide the immediate medical care that was necessary to save decedent's life.  (TAC ¶ 80.)

Here, for the same reasons as previously stated, there

are no facts to show that Baughman was aware of decedent's specific medical needs.  Furthermore, there are no specific facts to establish that Baughman directed, participated in, or knew that his subordinates were not following prison policy or that his subordinates were deliberately indifferent to decedent's medical needs.  Moreover, plaintiffs' assertion that Baughman's failure to train or supervise his subordinates caused the delay in response to the incident is conclusory and fails to allege either his personal involvement or a sufficient causal connection between Baughman's alleged conduct--failure to train or supervise--and the alleged constitutional deprivation--inadequate medical care.

Accordingly, the court will grant defendants' Motion to dismiss plaintiffs' second and third causes of action as alleged against defendant Baughman.[5]

B.    State Law Claims

1.    California Government Tort Claims Act

Defendants allege that plaintiffs' state law claims against defendants, except failure to summon medical care against CDCR, are barred for failure to comply with the California Government Claims Act.

Under the Government Claims Act, no suit for money or damages may be brought against a public entity on a cause of action for which a claim ("government claim") satisfying California Government Code § 910 has been submitted and denied.

_____

[5]    Because plaintiffs have not sufficiently alleged that Baughman violated a constitutional right, the court need not decide whether Baughman is entitled to qualified immunity on plaintiffs' federal claims.

11

Cal. Gov't Code § 945.5; Blair v. Superior Court, 218 Cal. App. 3d 221, 224 (3d Dist. 1990). Section 910 requires that the government claim include, among other requirements, "the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" as well as "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." Cal. Gov't Code § 910(c), (d). The claimant is also required to identify "the name or names of the public employee or employees causing the injury, damage, or loss, if known." Cal. Gov't Code § 910(e). "Compliance with the [] Claims Act is an element of the cause of action, is required, and failure to file a claim is fatal to a cause of action." Livingston v. Sanchez, No. 1:10-cv-1152 LJO, 2012 WL 3288177, at *2 (E.D. Cal. Aug. 10, 2012) (internal quotations and citations omitted).

"Where a submitted claim is deficient in some way, but the claim substantially complies with all of the statutory requirements, the doctrine of 'substantial compliance' in some cases may validate the deficient claim." Gen. Sec. Servs. Corp. v. County of Fresno, 815 F. Supp. 2d 1123, 1133 (E.D. Cal. 2011) (Ishii, J.) (citing Sparks v. Kern Cty. Bd. of Supervisors, 173 Cal. App. 4th 794, 800 (5th Dist. 2009)). "However, the doctrine of substantial compliance cannot cure the 'total omission of an essential element from the claim, or remedy a plaintiff's failure to comply meaningfully with the statute.'" Id. (citations omitted). The purpose of section 910 is "to provide the public entity sufficient information to enable it to adequately

investigate claims and to settle them, if appropriate, without the expense of litigation." <u>City of San Jose v. Superior Court</u>, 12 Cal. 3d 447, 455 (1974). "[T]he statute should not be applied to snare the unwary where its purpose is satisfied." <u>Gen. Sec. Servs. Corp.</u>, 815 F. Supp. 2d at 1133.

Here, plaintiffs filed a timely government claim with the State as required under section 910.[6] Defendants assert that plaintiffs did not comply with the Government Claims Act because plaintiffs' government claim did not name Baughman, and the government claim alleges acts and omissions by "personnel at Folsom State Prison." While plaintiffs' government claim does not mention Baughman or California State Prison-SAC, it does purport to bring claims against CDCR and the personnel at the prison where the suicide occurred.[7] Regardless, the Government Claims Act does not require the claimant to name each defendant; instead, the statute requires plaintiffs to name individual public employees "if known." Cal. Gov't Code § 910(e). Thus,

---

[6] The court takes judicial notice of plaintiffs' government claim. <u>See</u> <u>Moore v. City of Vallejo</u>, 73 F. Supp. 3d 1253, 1256 (E.D. Cal. 2014) (Mendez, J.) (taking judicial notice of government tort claim because "[s]uch a document is a matter of public record and is necessarily relied on by Plaintiffs in bringing their state law claims.").

[7] Plaintiffs initially believed decedent committed suicide at Folsom State Prison because the Sacramento County Coroner's Report listed the decedent's place of death as "Folsom State Prison". (Pls.' Opp'n at 4-5 (Docket No. 36).) Plaintiffs originally relied on the coroner's report in drafting the government claim, and later learned that the decedent committed suicide at California State Prison-SAC. (<u>Id.</u>) The court notes that the California State Prison-SAC is a state prison located in Folsom. The facility is adjacent to Folsom State Prison, and both prisons are located on the same road.

plaintiffs' failure to name certain defendants in their government claim, where those defendants were later named in the Complaint, does not require dismissal of those state law claims under the Government Claims Act.

Defendants also argue that the government claim does not comply with the Government Claims Act because the government claim did not give defendants any reason to investigate negligent conduct, specifically a failure to train or supervise. (Defs.' Mem. P. & A. at 10 (Docket No. 33-1).)

Here, plaintiffs' government claim states that while incarcerated at Folsom State Prison, "decedent was showing signs and symptoms of suicidal ideation and behavior" and that "decedent was not provided with proper medical and supervisory care, and appropriate precautions," which lead to decedent's suicide. (Defs.' Req. for Judicial Notice ("RJN") (Docket No. 33-2).) Moreover, plaintiffs contend "that the agents and employees of the State of California failed in their statutory duties under [] California . . . law." (Id.) Lastly, the government claim alleges that "the State of California and its employees knew and/or had reason to know that decedent was in immediate need of medical and other supervisory care yet . . . failed to take reasonable action to summon such care in order to protect against decedent's attempted suicide." (Id. at 8.)

These allegations in the government claim provide the public entity with sufficient information to enable it to conduct an adequate investigation. See City of San Jose, 12 Cal. 3d at 455. Moreover, while the Third Amended Complaint may contain additional theories of liability not listed in the government

claim, those theories are based on the same factual foundation as those in the government claim.  See Gen. Sec. Servs. Corp., 815 F. Supp. 2d at 1134 (quoting Dixon v. City of Livermore, 127 Cal. App. 4th 32, 40, 42 (2005)) ("[I]t is permissible to plead additional theories where the 'additional theories [are] based on the same factual foundation as those in the claim.'").  Thus, the government claim put defendants on notice to investigate whether CDCR, its agents, and employees followed proper precautions to protect against decedent's suicide attempt, including failing to train or supervise their employees.  See White v. Superior Court, 225 Cal. App. 3d 1505, 1511 (1st Dist. 1990) (finding that failure of plaintiff to mention in government claim against city and county any alleged problems in hiring, training, retention, and supervision of officer did not bar plaintiff from asserting such allegations in plaintiff's complaint where plaintiff's complaint and her government claim were predicated on the same fundamental facts concerning the officer's conduct).

Because the court finds that plaintiffs' government claim substantially complies with the Government Claims Act, the court will deny defendants' Motion to Dismiss as to plaintiffs' state law claims for failure to comply with the Government Claims Act.

2.    Fourth Claim: Negligence/Wrongful Death

a.    Claim against CDCR

Plaintiffs concede that the negligence cause of action against defendant CDCR should be dismissed.  Accordingly, the court will dismiss plaintiffs' fourth cause of action for negligence asserted against CDCR.

b.   Claim against Baughman

        To state a claim for negligence, plaintiffs must allege: (1) a legal duty to use reasonable care, (2) breach of that duty, (3) proximate cause between the breach and (4) the plaintiff's injury.  Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339, (2d Dist. 1998).  Under California law, a jailer has a special relationship with a prisoner that creates a duty of care.  Love v. Salinas, No. 2:11-cv-361-MCE, 2013 WL 4012748, at *15 (E.D. Cal. Aug. 6, 2013) (citing Lawson v. Superior Court, 180 Cal. App. 4th 1372, 1389-90 (4th Dist. 2010); Giraldo v. Dep't of Corr. & Rehab., 168 Cal. App. 4th 231, 240 (1st Dist. 2008)).  Thus, for example, "[a] deputy may be held legally responsible for a detainee's injuries if the deputy's actions or inaction are the moving force behind a series of events that ultimately lead to a foreseeable harm being suffered, even if other intervening causes contribute to the harm."  Campos v. County of Kern, No. 1:14-cv-1099 DAD JLT, 2017 WL 915294, at *14 (E.D. Cal. Mar. 7, 2017) (citing cases).

        Here, plaintiffs allege that Baughman had a number of duties to decedent including, but not limited to, a duty to render access and delivery of mental and medical care, treatment, and emergency services to decedent.  (TAC ¶ 68.)  Plaintiffs also allege Baughman had a duty to ensure the competence of his employees, to observe, report and monitor decedent, and to train, supervise, and instruct his subordinates.  (Id. ¶ 70.) Plaintiffs allege that Baughman breached his duties, and as a direct result of the breach of his duty of care to decedent, plaintiffs have suffered damage.  (Id. ¶ 68-71.)

16

At oral argument, plaintiffs' counsel argued that Baughman had a duty to ensure inmates are adequately supervised, and that prison employees follow all protocols, policies, and procedures. Plaintiffs' counsel argued that because an employee did not supervise decedent as required by policy on the night decedent committed suicide, Baughman, as warden, was liable for negligence. Plaintiffs' counsel went on to argue that the warden may be liable for any harm that results from the negligence of prison employees. To so hold would amount to a finding of strict liability for all actionable conduct that occurs in the prison. That is not the law. As the warden of a large prison, Baughman was not an ensurer of the safety of every inmate.

Under California Government Code section 820.8, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person." However, a public employee is liable for injury proximately caused by his own negligent or wrongful act or omission. Id. "Supervisory personnel whose personal involvement is not alleged may not be held responsible for the acts of their subordinates under California law." Milton v. Nelson, 527 F.2d 1158, 1159 (9th Cir. 1975) (holding that under California law, including section 820.8, a prison director, warden, and associate warden could not be held vicariously liable for the actions of their subordinates). Thus, plaintiffs cannot hold Baughman liable based solely on his supervisory role as warden of California State Prison-SAC. Rather, plaintiffs must allege sufficient facts to allege that Baughman's own acts as a supervisor proximately caused the injury. See Johnson v. Baca,

No. 1:30-cv-4496 MMMA JWX, 2014 WL 12588641, at *17 (C.D. Cal. Mar. 3, 2014) (denying defendants' motion to dismiss because plaintiff alleged facts that, if proved, would give rise to liability for injury proximately caused by the Sheriff's own negligent or wrongful act or omission).

Furthermore, as previously discussed, "there is nothing from which the court could plausibly infer that defendant [Baughman] was aware of [decedent]'s need for medical attention and failed to respond appropriately to it." Lapachet v. California Forensic Med. Grp., Inc., No 1:17-cv-1226 DAD EPG, 2018 WL 2564398, at *10 (E.D. Cal. June 1, 2018). Nor are there any facts from which the court could infer that Baughman was aware of or did not adequately investigate his subordinates' alleged failure to monitor and supervise inmates such as decedent. Thus, the court is unable to discern what actions Baughman allegedly took or failed to take that constituted a breach of duty that he owed to decedent. See id. Moreover, without sufficient facts regarding Baughman's knowledge that decedent was suicidal or that his subordinates failed to adequately monitor, supervise, or treat decedent, plaintiffs have not sufficiently alleged that Baughman's action or inaction created a foreseeable harm. See Johnson v. County of Los Angeles, 143 Cal. App. 3d 298, 307-08 (2d Dist. 1983) ("The most important policy consideration is the foreseeability of the harm: as a general principle a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.") Accordingly, plaintiffs' negligence claim against

Baughman will be dismissed.

3.   Fifth Claim: Failure to Summon Medical Care

Finally, defendants move to dismiss plaintiffs' failure to summon medical care under California Government Code Section 845.6 against both CDCR and Baughman.[8]

Section 845.6 provides that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Cal. Gov't Code § 845.6.   The section "limits the duty to provide medical care for prisoners to cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care."   Id.   To state a claim under section 845.6, plaintiffs must establish that: "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care."   Jett v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006).   "A suicidal state is a serious and obvious medical condition requiring immediate care."

_____

[8]    Defendants argue that section 845.6 immunizes public employees for injuries caused by the failure of the employee to furnish medical care for a prisoner.   Section 845.6 states that "[n]either a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." However, a public employee and the entity "is liable if the employee knew or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such care."   Thus, defendants cannot claim immunity for plaintiffs' fifth cause of action for failure to summon medical care.   See Castaneda v. Dep't of Corr. & Rehab., 212 Cal. App. 4th 1051, 1071 (2d. Dist. 2013) ("[T]he duty to summon is presented as the exception to the broad, general immunity for failing to furnish or provide medical care.")"

<u>Johnson v. Baca</u>, No. 13-cv-4496 MMM AJWX, 2014 WL 12588641, at *18 (C.D. Cal. Mar. 3, 2014) (citing <u>Johnson</u>, 143 Cal. App. 3d at 316–17)).

A.   <u>Against Baughman</u>

Here, plaintiffs allege that defendants knew or had reason to know of the need for intensive medical care for decedent because of his recent prior suicide attempts while in custody, his participation in the Mental Health Service Delivery System, and the records available to and generated by CDCR indicating that decedent was an immediate threat to his safety. (TAC ¶ 78.)  Thus, plaintiffs allege that defendants' failure to provide immediate medical care in the form of adequate monitoring[9] and mental health care proximately caused decedent's suicide.  (<u>Id.</u> ¶ 76.)  For the same reasons as previously discussed, plaintiffs have not sufficiently alleged that Baughman personally knew or had reason to know of decedent's need for immediate medical need.  Accordingly, the court will grant defendants' motion to dismiss plaintiffs' failure to summon medical care under section 845.6 against Baughman.

B.   <u>Against CDCR</u>

---

[9]   California courts hold that the failure to prescribe necessary medication or, once summoned to provide treatment, to ensure proper diagnosis, or to monitor the progress of an inmate that the public employee has been summoned to assist, are issues relating to the manner in which medical care is provided, and do not subject the State to liability under section 845.6 for failure to summon.  <u>Castaneda</u>, 212 Cal. App. 4th at 1074.  Thus, to the extent that plaintiffs allege defendants provided healthcare, monitoring, and treatment to decedent, but that care was not adequate, plaintiffs do not state a claim under section 845.6.

"Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment." Mary M. v. City of Los Angeles, 54 Cal. 3d 202, 208 (1991). "California Government Code section 815.2 provides that, unless the employee is immune from liability, public entities are liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." Bulgara v. County of Stanislaus, No. 1:18-cv-804 DAD SAB, 2018 WL 3655434, at *6 (E.D. Cal. July 31, 2018) (Boone, J.) (citing Cal. Gov't Code § 815.2(a)). Thus, "CDCR may be liable for its employee's failure to summon immediate medical care to a prisoner under Section 845.6." Love, 2013 WL 4012748, at *14.[10]

Here, plaintiffs allege that while decedent was at California State Prison-SAC he showed signs and symptoms of

_____

[10]    Defendants assert that CDCR is immune from suit under the Eleventh Amendment. The Eleventh Amendment states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. To overcome the Eleventh Amendment bar, either the State must have consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." Phillips v. Cty. of Fresno, No. 1:13-CV-0538 AWI BAM, 2014 WL 12768165, at *3 (E.D. Cal. May 14, 2014) (citing Pennhurst Sch. & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984)). As previously stated, Section 845.6 permits suit against CDCR if an "employee knows or has reason to know that the prisoner is in need of immediate medical care." Thus, the Eleventh Amendment does not bar plaintiffs' failure to summon medical care claim against CDCR. See id.

suicidal ideation and behavior.  (TAC ¶ 25.)  Plaintiffs also
allege that decedent's sister notified California State Prison-
SAC in writing that she feared decedent's condition was getting
worse.  (Id.)  Plaintiffs further claim that individuals who
monitored, supervised, treated, and administered decedent as an
inmate and who reported to the chain of command were in a
position to know of decedent's need for medical care.  (Id. ¶
78.)  Moreover, plaintiffs claim that the staff at California
State Prison-SAC knew and failed to provide antidepressant
medication or other therapies and interventions indicated by the
patient's medical history.  (Id. ¶ 80.)

        Plaintiffs do not have to rely on the actions or
inactions of Baughman to state a claim against CDCR.  Instead,
plaintiffs need only allege that a CDCR employee had actual or
constructive knowledge of decedent's need for immediate medical
care, and failed to summon immediate medical care.  See Love,
2013 WL 4012748, at *14 (denying summary judgment with respect to
plaintiff's section 845.6 claim against CDCR where plaintiff
presented evidence that correctional officer failed to summon
immediate medical care to prisoner); Gillian v. CDCR, No. 1:15-
CV-37 MJS, 2015 WL 1916417, at *7 (E.D. Cal. Apr. 27, 2015)
(finding plaintiff alleged sufficient cause of action against
CDCR where plaintiffs sufficiently alleged a state cause of
action against defendant CDCR employees or agents that were
acting within the scope of their agency or employment).  Here,
plaintiffs allege that CDCR employees were notified of decedent's
sister's concerns, witnessed decedent showing signs and symptoms
of suicidal ideation, and failed to provide interventions as

outlined in decedent's medical records.  Given the foregoing
allegations, the court finds that plaintiffs have sufficiently
alleged that CDCR employees had actual or constructive knowledge
of decedent's need for immediate medical care, and failed to
summon immediate medical care.  Thus, because plaintiffs have
sufficiently alleged a section 845.6 claim against an employee of
CDCR, plaintiffs have sufficiently alleged a section 845.6 claim
against CDCR.

      Accordingly, the court will deny defendants' motion to
dismiss plaintiffs' claim against CDCR for failure to summon
medical care.

      IT IS THEREFORE ORDERED that:

          1.    All claims against Baughman are dismissed.

          2.    The fourth claim for negligence is dismissed
              against CDCR.

          3.    In all other respects, defendants' Motion to
              Dismiss is denied.

      Plaintiffs have twenty days from the date this Order is
signed to file a Fourth Amended Complaint, if they can do so
consistent with this Order.

Dated:  August 23, 2018

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

23