1  STEVEN C. GLICKMAN, State Bar No. 105436
   Email: scg@glickman-law.com
2  NICOLE E. HOIKKA, State Bar No. 306324
   Email: neh@glickman-law.com
3  **GLICKMAN & GLICKMAN,**
   **A LAW CORPORATION**
4   9460 Wilshire Boulevard, Suite 330
    Beverly Hills, CA 90212
5   Telephone:  (310) 273-4040
    Facsimile:  (310) 273-0829
6

7  JOHN E. SWEENEY, State Bar No. 116285
   Email: jes@thesweeneyfirm.com
8  **THE SWEENEY FIRM**
    315 S. Beverly Drive, Suite 305
9   Beverly Hills, CA 90212
    Telephone:  (310) 277-9595
10  Facsimile:  (310) 277-0177

11

Attorneys for Plaintiffs M.B. III, etc., et al.

12

13                    UNITED STATES DISTRICT COURT

14             FOR THE EASTERN DISTRICT OF CALIFORNIA

15                      SACRAMENTO DIVISION

16

| | |
|---|---|
| 17 **M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.;  TWYLLER WEARY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.,**<br><br>                    **Plaintiffs,**<br><br>          **v.**<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>                    **Defendants.** | Case No. 2:17-cv-02395-WBS-DB<br><br>**FOURTH AMENDED COMPLAINT FOR DAMAGES**<br><br>1) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Deliberate Indifference)<br><br>2) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Supervisory Liability for Policy, Custom, or Practice);<br><br>3) Deprivation of Civil Rights, 42 U.S.C. § 1983 (Supervisory Liability for Failure to Train and Supervise and Negligent Hiring); |

4) **Negligence (Wrongful Death); and**

5) **Violation of Government Code §§ 844.6 and 845.6 (Failure to Summon Immediate Medical Care)**

**DEMAND FOR JURY TRIAL**

Trial Date: None
Action Filed: 11/14/2017

COMES NOW Plaintiffs M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr., and TWYLLER WEARY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr. (hereinafter collectively "Plaintiffs"), and show this honorable court the following:

<u>JURISDICTION AND VENUE</u>

1.   This Court has jurisdiction under 28 U.S.C. § 1343(4) for violations of the 1871 Civil Rights Enforcement Act, as amended, including 42 U.SC. § 1983, and 42 U.S.C. § 12188(a). This Court has supplemental jurisdiction over Plaintiff M.B. III's state law causes of action under 28 U.S.C. § 1367.

2.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the unlawful acts and practices alleged herein occurred at California State Prison-Sacramento (hereinafter "CSP-Sacramento") in Represa, in Sacramento County, California, within the Eastern District of California.

<u>THE PARTIES</u>

3.   **Plaintiff M.B. III** is the biological son, successor in interest, and personal representative of the estate of his father

Milton Beverly, Jr. ("Decedent"). He brings this claim for himself personally, as Decedent's successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure §§ 377.30 and 377.60.

4.   **Plaintiff TWYLLER WEARY** is the mother, successor in interest, and personal representative of the estate of her son, Decedent. She brings this claim for herself personally, as decedent's successor in interest and heir, as the personal representative of the estate, and, as applicable, pursuant to California Code of Civil Procedure §§ 377.30 and 377.60.

5.   The declarations of TITICE BEVERLY as Guardian Ad Litem for M.B. III and TWYLLER WEARY are attached hereto as Exhibits "1" and "2."

6.   **Defendant Sergeant TODD MANES** (Badge #69918) [previously named as DOE 1] was the Enhanced Outpatient Program sergeant charged with supervising the correctional officers in the B-5 area at the time of Decedent's death. He was employed by California Department of Corrections and Rehabilitation (hereinafter "CDCR") as a correctional officer at CSP-Sacramento at all times relevant to this complaint. Defendant MANES was acting in a supervisory capacity at CSP-Sacramento and was charged with the supervision of the correctional officers working in the unit at the time of Decedent's death. He was among the first to respond to the scene after Decedent's body was discovered in his cell. Defendant MANES is being sued in his individual capacity in the federal claims and negligence/wrongful death claim and sued in his individual and official capacities

for violations of Government Code Sections 844.6 and 845.6.

7.   **Defendants KYLE MOHR** (Badge #82617) [previously named as DOE 6], **ANDREW BALLARD** (Badge #86712) [previously named as DOE 7], and **KEN BROWN** (Badge #68250) [previously named as DOE 3] were Correctional Officers and the B Yard Officers charged with supervising and monitoring the area in which Decedent was housed on the day of Decedent's death. They were employed by CDCR as correctional officers at CSP-Sacramento at all times relevant to this complaint. They were among the first to respond to the scene after Decedent's body was discovered in his cell. Defendants MOHR, BALLARD, and BROWN are being sued in their individual capacities in the federal claims and negligence/wrongful death claim and sued in their individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

8.   **Defendant MICHAEL MUNROE** (Badge #54508) [previously named as DOE 8] was a Correctional Officer and the B-5 Control Officer charged with supervising and monitoring the area in which Decedent was housed on the day of Decedent's death. He was employed by CDCR as a correctional officer at CSP-Sacramento at all times relevant to this complaint. He was among the first to respond to the scene after Decedent's body was discovered in his cell. Defendant MUNROE is being sued in his individual capacity in the federal claims and negligence/wrongful death claim and sued in his individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

9.   **Defendant STACY VUE** (Badge #86970) [previously named as DOE 9] was a Correctional Officer and the Yard Gunner charged with supervising and monitoring from the control booth the area

in which Decedent was housed on the day of Decedent's death. She was employed by CDCR as a correctional officer at CSP-Sacramento at all times relevant to this complaint. She was among the first to respond to the scene after Decedent's body was discovered in his cell. Defendant VUE is being sued in her individual capacity in the federal claims and negligence/wrongful death claim and sued in her individual and official capacities for violations of Government Code Sections 844.6 and 845.6.

10.  **Defendant A. DUTTON, PsyD** [previously named as DOE 2] was the psychologist who performed Decedent's last Mental Health Evaluation on or around September 25, 2016. Dr. Dutton was employed by CDCR as a psychologist at CSP-Sacramento at all times relevant to this complaint. On information and belief, Dr. Dutton is charged in this capacity with delivering medical attention and treatment to inmates at CSP-Sacramento at the time of Decedent's death. Dr. Dutton failed to alert staff after the Mental Health Evaluation that Decedent had a heightened risk of suicide, and failed to order or carry out a follow up evaluation. Dr. Dutton failed to properly document Decedent's suicidal behavior and ideation. Dr. Dutton failed to implement policies on suicide prevention and reporting. Dr. Dutton is being sued in their individual capacity except for violations of Government Code § 845.6, for which they are being sued in their individual as well as official capacity.

11.  The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 4, 5 and 10, inclusive, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. Plaintiffs are informed and

1  believe and thereon allege that each of the defendants designated

2  herein as DOES 4, 5, and 10 is responsible in some manner for the

3  events and happenings referred to herein and was a substantial

4  factor in causing injury and damages proximately thereby to

5  Decedent and Plaintiffs, as herein alleged. Plaintiffs are

6  informed and believe and thereon allege that DOES 4, 5 and 10

7  were correctional officers, supervisors, or members of the

8  medical or mental health staff at CSP-Sacramento.

9      12.  Plaintiffs are informed and believe and thereon allege

10  that all times herein mentioned, each of the defendants was the

11  agent and/or employee and/or conspirator of each of the remaining

12  defendants, and in doing the things herein alleged, was acting

13  within the scope of such agency, employment, and/or conspiracy,

14  and with the permission and consent of the other co-defendants.

15          **COMPLIANCE WITH CALIFORNIA TORT CLAIMS ACT**

16      13.  Plaintiff M.B. III timely filed a Government Claim Form

17  with the STATE OF CALIFORNIA on May 10, 2017. The Government

18  Claim was denied by operation of law. *See* California Government

19  Code § 912.4(c). The claim was filed against the state agencies

20  and employees whose names were known to Plaintiffs at the time of

21  filing the Government Claim Form.

22                  **INITIAL ALLEGATIONS**

23      14.  Each paragraph of this Third Amended Complaint is

24  expressly incorporated into each cause of action which is a part

25  of this Third Amended Complaint.

26      15.  All defendants' acts and omissions were engaged in

27  maliciously, callously, oppressively, wantonly, recklessly, and

28  with deliberate indifference to the rights of Decedent and

1  Plaintiffs.

2      16.   This complaint may be pled in the alternative pursuant

3  to Federal Rules of Civil Procedure, Rule 8(d)(2).

4      17.   Milton Beverly, Jr. (Decedent), Plaintiff M.B. III's

5  father and Plaintiff TWYLLER WEARY'S son, had been charged with

6  various crimes. He was convicted and while in custody in the

7  County of Los Angeles, prior to his sentencing, he attempted

8  suicide. He was placed on suicide precautions at that time by the

9  County of Los Angeles.

10      18.   Subsequently, Decedent was sentenced and transferred to

11  Vacaville Mental Health Facility where he was supervised with

12  suicide precautions.

13      19.   Decedent was subsequently transferred to North Kern

14  State Prison in Delano, California. North Kern is a state prison

15  within the CDCR. While a prisoner at North Kern, Decedent again

16  attempted suicide.

17      20.   On or about April 11, 2016, Decedent was transferred

18  from North Kern State Prison to California Medical Facility.

19      21.   Decedent was placed in a "crisis bed" at California

20  Medical Facility and was a participant in the Mental Health

21  Service Delivery System at the Enhanced Outpatient Program level

22  of care.

23                 **DECEDENT'S SUICIDE AT CSP-SACRAMENTO**

24      22.   Decedent was subsequently transferred to CSP-Sacramento

25  on or around June 2, 2016.

26      23.   When he arrived at CSP-Sacramento, the staff carrying

27  out intake had access to a computer-based Strategic Offender

28  Management System (SOMS) which contained data about Decedent's

placement in the Mental Health Service Delivery System and his status in the Enhanced Outpatient Program. The staff also had access to the Electronic Records Management System (ERMS) digital files, from which staff could learn more information about Decedent's medical needs and housing requirements.

24.   During the time Decedent was at CSP-Sacramento, Decedent showed signs and symptoms of suicidal ideation and behavior establishing that Decedent needed immediate medical care to protect against this substantial suicide risk. In the months prior to his death, Decedent's psychiatric and medical condition worsened.

25.   On or around June 10, 2016, Decedent was noted to be "very depressed and withdrawn" and referred to the Mental Health Service Delivery System.

26.   On or around September 1, 2016, Decedent was identified by staff at CSP-Sacramento as having a 'disability' (participation in the Enhanced Outpatient Program for mental health care) and moved from the "SHU" (special housing unit) to B facility, 5 block ("B-5") housing for Enhanced Outpatient Program participants. On information and belief, Plaintiffs assert that B-5 was a housing assignment with less monitoring and supervision for inmates, including Decedent, than the SHU available housing at CSP-Sacramento.

27.   The last time Decedent received a Mental Health Evaluation by a CDCR clinician was on or around September 25, 2016, when Decedent was evaluated by Defendant DUTTON. On information and belief, Plaintiffs allege that as the last psychologist to perform a Mental Health Examination, Defendant

1  DUTTON was responsible for making and implementing

2  recommendations for proper and adequate mental and medical

3  healthcare for Decedent. Defendant DUTTON failed to make or

4  implement said recommendations and failed to document Decedent's

5  suicidal behavior and ideation. No follow-up Mental Health

6  Evaluation was performed in the 8 weeks prior to Decedent's

7  suicide, even though Decedent was noted to have a "qualifying

8  mental disorder" and to be prescribed "psychotropic medication."

9       28.  In October 2016, Decedent's sister, TITICE BEVERLY,

10  attempted several times to reach CSP-Sacramento personnel by

11  telephone to request medical and mental health assessment and

12  treatment for Decedent. She received no response or return call.

13  In a letter dated November 1, 2016, Decedent's sister notified

14  CSP-Sacramento personnel in writing that she feared Decedent's

15  condition was getting worse. It is unknown to Plaintifs who at

16  CSP-Sacramento received and/or was responsible for processing

17  said letter and Plaintiffs will request leave of court to amend

18  the operative complaint to allege said information when it is

19  ascertained.

20       29.  In the weeks before his death, Decedent made several

21  phone calls, which were recorded, from CSP-Sacramento to his

22  sister and to Plaintiff M.B. III's mother. Decedent unequivocally

23  and repeatedly expressed his intention to kill himself. These

24  monitored and recorded calls included four calls on November 23,

25  2016, the day before Decedent's suicide, at 0905, 1843, 1859, and

26  1902.

27       30.  In addition to the warnings by members by Decedent's

28  family and the recorded and monitored phone calls in which he

professed the imminent intention to commit suicide, Decedent was also diagnosed with bipolar disorder, according to prison medical records. Despite this diagnosis, his prison-provided medication regiment did not include antidepressant medication.

31.  Further, Decedent was housed in a cell with access to bedsheets, even though Defendants knew and were trained that inmates with an increased risk of suicide should not be given materials from which ligatures may be made, including cloth bedsheets. Decedent ultimately was successful in committing suicide at CSP-Sacramento because he used his bedsheets to create ligatures.

32.  Despite the suicidal signs and symptoms and the warnings of Decedent's family members, Decedent was provided with neither proper medical and supervisory care nor appropriate suicide precautions.

33.  The personnel assigned to perform periodic "cell checks" on Decedent's prison cell failed to perform said cell checks every hour, as required by prison policy and procedures.

34.  On information and belief, Plaintiffs allege that written policy, procedure, and practice require that correctional officers personally observe inmates on a regular schedule and not less than once per hour. Suicidal inmates should be observed more frequently; for example, inmates in 'holding cells' at CSP-Sacramento are checked for welfare every 15 minutes.

35.  In addition, it is believed that Decedent was not prescribed and/or administered appropriate medications, such as antidepressants, while in custody at CSP-Sacramento. On the date of his death, the only medication offered to Decedent was Tylenol

1  on an 'as-needed' basis.

2      36.  On or about November 24, 2016, Decedent was successful

3  in committing suicide.

4          **ALLEGATIONS REGARDING DEFENDANTS' CONDUCT**

5      37.  On the day of Decedent's death, prison personnel

6  including Defendants MANES, MOHR, BALLARD, MUNROE, BROWN, VUE,

7  and DOES 4, 5, and 10, failed to perform a "cell check" on

8  Decedent's cell between approximately 0700 hours and when

9  Decedent was discovered "Man Down" at or around 1015 hours.

10     38.  On information and belief, this failure to perform a

11  "cell check" on Decedent left Decedent, a suicidal and depressed

12  inmate, unsupervised for a period of time long enough for

13  Decedent to successfully commit suicide by asphyxiation.

14     39.  Plaintiffs are informed and believe and thereon state

15  that at all times relevant hereto, the personnel connected with

16  the CDCR, including the personnel at CSP-Sacramento, knew or in

17  the existence of reasonable care should have known that Decedent

18  was a suicide risk, as Decedent had attempted suicide on at least

19  two prior occasions while in custody, including while in custody

20  at a CDCR facility.

21     40.  Specifically, Defendants MANES, MOHR, BALLARD, MUNROE,

22  BROWN, VUE, DUTTON, and DOES  4, 5, and 10 were subjectively

23  aware of Decedent's serious medical need because prior to his

24  death, they accessed and reviewed (and subsequently had access

25  to) the Strategic Offender Management System (SOMS) and

26  Electronic Records Management System (ERMS) systems that detailed

27  Decedent's health condition(s), his history of suicide attempts,

28  past and current housing placements (including past placement in

a "crisis bed"), and other relevant information. On information and belief, Plaintiffs allege that Defendant DUTTON further had access to Decedent's full prison medical record, which contained even more detailed information regarding Decedent's health conditions and past suicide attempts.

41.   From their review and familiarity with the SOMS and ERMS records relating to Decedent, Defendants knew that Decedent had a heightened risk of suicide.

42.   Defendants also knew that Decedent had made statements evidencing an imminent intention to kill himself because his phone calls were monitored and recorded, and because Defendants periodically carried out cell searches, in which they would have seen notes and other writings by Decedent referencing suicide and expressing suicidal ideation. For example, Beverly had in his cell notes which read, in pertinent part:

    a. "…[F]orgive my early departure. I harbor a fascination
       of death."

    b. "I fear living instead of fearing death."

43.   On information and belief, Plaintiffs assert that correctional officers at CSP-Sacramento are trained to take all suicide threats by detainees seriously.

44.   Despite this, Defendants failed to appropriately respond to the information they had learned by reviewing the SOMS and ERMS records and did not adequately monitor Decedent via the hourly cell check process. Defendants failed to provide and/or administer appropriate and indicated (as well as life-saving) medical treatment and prescription medication, including antidepressants, and instead offered Decedent only Tylenol on the

day of his death. Defendants did not report or respond to

Decedent's suicide threats made via phone call and in writing.

45.   Once Decedent was transferred to CSP-Sacramento,

despite the fact that Decedent was showing signs and symptoms of

ongoing suicidal ideation and behavior demonstrating that

Decedent was at an immediate suicide risk, Defendants failed to

exercise proper suicide precautions such that Decedent was able

to commit suicide as alleged.

46.   Based on this, Plaintiffs contend that the Defendants,

as agents and employees of the CDCR, failed in their statutory

duties under both California and Federal law, including but not

limited to violations of the Eighth and Fourteenth Amendments of

the United States Constitution, by failing to provide adequate

mental health services and adequate protection to Decedent,

thereby depriving Decedent and Plaintiffs of their civil rights.

47.   Moreover, Defendants knew and/or had reason to know

that Decedent was in immediate need of medical and other

appropriate supervisory care, yet they failed to take reasonable

action to summon such care in order to protect against Decedent's

attempted suicide.

**GENERAL ALLEGATIONS**

48.   All defendants acted without authorization of law.

49.   Each defendant participated in the violations herein

alleged, or directed the violations herein alleged, or knew of

the violations herein alleged, and failed to act to prevent them.

Each defendant ratified, approved, or acquiesced in the

violations herein alleged.

50.   As joint actors with joint obligations, each defendant

was and is responsible for the failures and omissions of the other.

51.  Each defendant acted individually and in concert with the other defendants and others not named in violating Decedent's and Plaintiffs' rights.

52.  As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the defendants, Decedent suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life during the period of time in which Defendants failed to provide appropriate psychiatric care and treatment for Decedent's urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering the hours preceding his suicide on November 24, 2016.

53.  As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies, and decisions of the defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in an amount to be determined at trial.

54.  Due to the acts of the defendants, Plaintiffs have suffered and continue to suffer, and are likely to suffer in the future, extreme and severe mental anguish as well as mental and physical pain and injury. For such injury, plaintiffs will incur significant damages based on psychological and medical care.

55.  As a further result of the conduct of each of the defendants, Plaintiffs have been deprived of familial

relationships, including the loss of Decedent Milton Beverly, Jr., Plaintiff M.B. III's father and Plaintiff TWYLLER WEARY'S son, and the emotional impact on their family unit as a whole.

56.   The aforesaid acts of all Defendants were willful, wanton, malicious, oppressive, in bad faith, and done with reckless disregard or with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, entitling Plaintiffs to exemplary and punitive damages in an amount to proven at the trial of this matter.

57.   By reason of the above described acts and omissions of all defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs so that they might vindicate the loss and impairment of their rights. By reason thereof, Plaintiffs request payment by defendants of a reasonable sum for attorney's fees, pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and any other applicable provision of law.

**FIRST CAUSE OF ACTION**

**Violation of 42 U.S.C. § 1983**

**Eighth and Fourteenth Amendments**

**Deliberate Indifference**

*By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on Behalf of the Estate of Milton Beverly, Jr., Against Defendants MANES, MOHR, BALLARD, MUNROE, BROWN, VUE, DUTTON, and DOES 4, 5, and 10 in their Individual Capacities*

58.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

59.   While Decedent was in custody at CSP-Sacramento, the

1  prison officials, including Defendants, were obligated to respond

2  if a serious medical should arise.

3       60.  On the day of Decedent's death, Defendant VUE was

4  stationed in B-5 Control, in the same building and row as

5  Decedent. Although Defendant VUE was tasked with monitoring

6  inmates in the B-5 area, Defendant VUE failed to check on

7  Decedent in his cell that morning prior to his death.

8       61.  On the day of Decedent's death, Defendant MUNROE was

9  working as a B-5 control officer. Although Defendant MUNROE was

10  tasked with monitoring inmates in the B-5 area, Defendant MUNROE

11  failed to check on Decedent in his cell that morning prior to his

12  death.

13       62.  On the day of Decedent's death, Defendant MOHR was

14            working as a B yard officer. Although Defendant MOHR

15            was tasked with monitoring inmates in the B-5 area,

16            Defendant MOHR failed to check on Decedent in his cell

17            that morning prior to his death.

18       63.  On the day of Decedent's death, Defendant BROWN was

19            working as a B-5 floor officer. Although Defendant

20            BROWN was tasked with monitoring inmates in the B-5

21            area, Defendant BROWN failed to check on Decedent in

22            his cell that morning prior to his death.

23       64.  On the day of Decedent's death, Defendant BALLARD was

24            working as a B yard officer. Although Defendant BALLARD

25            was tasked with monitoring inmates in the B-5 area,

26            Defendant BALLARD failed to check on Decedent in his

27            cell that morning prior to his death.

28       65.  On the day of Decedent's death, Defendant MANES was the

1    supervisor on duty as Sergeant in the B Facility

2    Enhanced Outpatient Program. He was tasked with

3    supervising his subordinate correctional officers as

4    they carried out their duties, including performing

5    cell checks for the welfare of the inmates in the B-5

6    area. Defendant MANES was aware from his personal

7    observation that hourly cell checks were not performed

8    by Defendant MANES' correctional officer subordinates

9    on the date of Decedent's death.

10   66.  On or around September 25, 2016, Defendant DUTTON

11   carried out a Mental Health Evaluation of Decedent. Dr. Dutton

12   failed to alert staff after the Mental Health Evaluation that

13   Decedent had a heightened risk of suicide. Dr. Dutton failed to

14   implement appropriate medical treatment following the evaluation.

15   Dr. Dutton failed to implement policies on suicide prevention and

16   reporting. Dr. Dutton failed to document or alert other staff of

17   Decedent's suicidal behavior and/or ideation. Dr. Dutton did not

18   order or complete a follow up Mental Health Evaluation, and

19   approximately 8 weeks after Dr. Dutton's evaluation, Decedent

20   committed suicide.

21   67.  Besides their knowledge of Decedent's specific medical

22   needs from having reviewed the SOMS and ERMS records, Defendants

23   MANES, MOHR, MUNROE, BALLARD, BROWN, and VUE also knew that

24   consistent, frequent monitoring was required of the inmates in

25   the B-5 area because it was for "EOP" inmates, like Decedent, who

26   were in the Enhanced Outpatient Program for mental health care.

27   68.  Decedent had a serious medical need during the period

28   he was incarcerated at CSP-Sacramento because he was at higher

1  risk of suicide. The factors contributing to his heightened

2  suicide risk included two previous suicide attempts while in

3  custody, a diagnosis of bipolar disorder, correspondence from

4  Decedent's family warning prison officials of his deteriorating

5  mental state, recorded telephone calls in which he stated his

6  imminent intention to commit suicide, and the absence of

7  antidepressants in his prison-provided medication regimen.

8      69.  Defendants' acts and failures to act were sufficiently

9  harmful to evidence deliberate indifference to Decedent's serious

10  medical need.

11      70.  As set forth above, Decedent was subjected to

12  deprivation of rights by defendants, acting or pretending to act

13  under color of law and of statutes, ordinances, regulations,

14  customs, and usages of the law of the United States, State of

15  California, and/or of the County of Sacramento, which rights

16  include, but are not limited to, privileges and immunities

17  secured to Plaintiffs by the United States Constitution and the

18  laws of the United States.

19      71.  By reason of the aforementioned acts, these defendants

20  have violated the Constitutional rights and liberty interest of

21  Decedent and each Plaintiff, including those rights provided for

22  in the Eighth and Fourteenth Amendments to the United States

23  Constitution, as well as those rights which are protected under

24  the Fourteenth Amendment's prohibition against depriving a person

25  of a right to family relationship without due process of law.

26      72.  Plaintiffs are informed and believe, and based on such

27  information and belief, allege that the defendants acted with

28  deliberate indifference to Decedent's serious medical needs and

1  safety.

2      73.  At all times mentioned herein, defendants knew, or had

3  reason to know, of Decedent's serious medical, physical, and

4  mental health conditions because of Decedent's prior suicide

5  attempts while in custody, his past participation in the CDCR's

6  Mental Health Service Delivery System, and his past placement in

7  a segregated unit because he presented an immediate threat to his

8  own safety, based upon their review of the SOMS and ERMS records,

9  as well as their training that allowed them to work in an

10  Enhanced Outpatient Program housing unit.

11      74.  Prior to Decedent's death, Defendants were deliberately

12  indifferent to these serious medical, physical, and mental health

13  conditions, or ignored them. Defendants also failed to provide

14  access to and delivery of adequate medical or mental health

15  intervention, care, and attention. Defendants also failed to

16  perform regularly scheduled personal observation of Decedent in

17  the form of "cell checks." Defendants also allowed Decedent

18  unrestricted and unsupervised access to materials from which he

19  could construct ligatures, i.e., his cloth bedsheets. Defendants

20  also knew or had reason to know of Decedent's vocalized suicidal

21  ideation because they monitored and recorded his telephone calls

22  and conducted searches of Decedent's cell that included his

23  writings, which referenced suicide and his own death.

24      75.  Decedent was subjected to deprivation of rights by

25  these defendants, acting under color of law and of statutes,

26  ordinances, regulations, customs and usages of the Law of the

27  United States, State of California, and County of Sacramento,

28  which rights included but are not limited to privileges and

immunities secured to Decedent by the Fourteenth or Eighth Amendments to the United States Constitution and laws of the United States, particularly (a) his right to access mental health and medical care and treatment for his serious but treatable condition; (b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for this mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

76.   Defendants were responsible for the promulgation of the policies and procedures, and allowance of the practices/customs, pursuant to which the acts of the employees of the CDCR alleged herein were committed. These defendants had ongoing knowledge that the California prison system failed to provide adequate medical care to its mentally ill and medically compromised inmate population and knew that these conditions created a significant risk of substantial harm to persons similarly situated to Decedent. These Defendants disregarded that risk by failing to take reasonable steps to avoid the risk. These defendants were deliberately indifferent to the lack of adequate mental health care services, creating an immediate risk to inmate health and safety, particularly for suicidal inmates such as Decedent.

77.   Defendants, at all times relevant to this Third Amended Complaint, were aware that at CSP-Sacramento there was insufficient direct supervision of mentally ill inmates, including Decedent and others similarly situated. These defendants knew that Decedent and others similarly situated required direct supervision to protect their physical safety, and to protect the mentally ill inmate population from each other and

1  from themselves. Defendants disregarded that risk to inmate

2  physical safety by allowing for insufficient direct supervision

3  of mentally ill inmates at CSP-Sacramento. Plaintiffs are

4  informed and believe and thereon allege that defendants were

5  aware through the reports of their subordinates, through

6  participation in prior civil rights litigation, and/or through

7  internal investigation and studies that there was an excessive

8  risk to inmate health or safety where suicidal inmates were not

9  being provided adequate medical and mental health screening,

10 direct supervision, and provision of medical and mental health

11 services.

12      78.  Plaintiffs allege that defendants' wrongful conduct

13 legally caused a deprivation of their constitutionally protected

14 liberty interest in familial companionship, love, and society of

15 their father and son, all to their damage in an amount to be

16 proven at trial.

17      79.  By virtue of the provisions of 42 U.S.C. § 1988,

18 Plaintiffs are entitled to and demand an award of reasonable

19 attorneys' fees and costs according to proof.

20      80.  Each individual defendant acted recklessly or with

21 callous indifference to Decedent's life-threatening physical,

22 medical, and/or psychiatric condition and Plaintiffs'

23 constitutional rights, and should be assessed punitive damages.

24 These acts include failing to provide adequate or indicated

25 mental or medical health care and failing to supervise and

26 monitor Decedent so as to prevent him from harming himself.

27 ///

28 ///

///

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Eighth and Fourteenth Amendments**

**Supervisory Liability for Policy, Custom, or Practice Causing**

**Constitutional Violations**

*By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on*

*behalf of the Estate of Milton Beverly, Jr., Against Defendants*

*MANES and DOES 4, 5 and 10 in Their Individual Capacities*

81.   Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though set forth fully herein.

82.   Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants, with deliberate indifference and conscious and reckless disregard for the safety, security, and constitutional and statutory rights of Decedent, engaged in the unconstitutional conduct and omissions as specifically elaborated above.

83.   Specifically, Defendant MANES knew of Decedent's specific medical needs and his heightened risk of suicide because of his review of the SOMS and ERMS records. He also participated in the assignment of Defendants MUNROE, MOHR, BALLARD, and VUE to their respective stations on the day of Decedent's death. He was further responsible for ensuring that his subordinates carried out hourly cell checks to ensure the welfare of the inmates under his purview.

84.   Defendant MANES failed to train his staff to appropriately respond to the history of suicide attempts and

ongoing mental health issues of Decedent that his staff learned through review of the SOMS and ERMS records for Decedent. In addition, Defendant MANES failed to train and supervise his staff to ensure compliance with the cell check policy as well as compliance with the policy that suicide threats by inmates should be taken seriously and responded to with appropriate action.

85. Defendants were responsible for the promulgation of the policies and procedures, and allowance of the practices/customs, pursuant to which the acts of the employees of the CDCR alleged herein were committed. These defendants had ongoing knowledge that the California prison system failed to provide adequate medical care to its mentally ill and medically compromised inmate population and knew that these conditions created a significant risk of substantial harm to persons similarly situated to Decedent. These defendants disregarded that risk by failing to take reasonable steps to avoid the risk. These defendants were deliberately indifferent to the lack of adequate mental health care services, creating an immediate risk to inmate health and safety, particularly for suicidal inmates such as Decedent.

86. Defendants, at all times relevant to this Third Amended Complaint, were aware that at CSP-Sacramento there was insufficient direct supervision of mentally ill inmates, including Decedent and others similarly situated. These defendants knew that Decedent and others similarly situated required direct supervision to protect their physical safety, and to protect the mentally ill inmate population from each other and from themselves. Defendants disregarded that risk to inmate physical safety by allowing for insufficient direct supervision

1  of mentally ill inmates at CSP-Sacramento.

2      87.   Plaintiffs are informed and believe and thereon allege

3  that at all times mentioned herein, Defendants, with deliberate

4  and/or conscious or reckless disregard for the safety and

5  constitutional rights of Decedent and other inmates with severe

6  mental health conditions, maintained, enforced, tolerated,

7  ratified, permitted, acquiesced in, and/or applied

8  unconstitutional policies, practices and customs including, but

9  not limited to:

10        a. Failure to provide adequate mental health services;

11        b. Failure to mitigate or eliminate known environmental

12           suicide hazards prevalent throughout jail housing

13           areas, including housing areas to which inmates with

14           serious mental illnesses are assigned;

15        c. Failure to provide appropriate custodial supervision of

16           inmates with mental health conditions, despite known

17           suicide hazards;

18        d. Failure to ensure that mental health housing and

19           treatment spaces met minimum safety design standards

20           for facilities in which persons with serious mental

21           illnesses are held;

22        e. Failure to ensure sufficient treatment space and

23           staffing necessary to provide adequate mental

24           healthcare;

25        f. Inadequate intake screening and assessment for housing

26           placement;

27        g. Inadequate monitoring and assessment of inmates' mental

28           health conditions;

        h. Insufficient mechanisms to ensure communication of

           relevant information between custodial, medical, and

           mental health staff;

        i. Failure to ensure appropriate suicide intervention

           measures; and

        j. Failure to ensure adequate training of correctional

           staff in suicide prevention and responding to mental

           healthcare crises.

88.   Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, the individual defendants' wrongful conduct was the result of policies, practices, and customs that had the effect of providing inmates of CDCR with mental health conditions unconstitutionally inadequate treatment; permitting and promoting unsafe conditions for inmates leading to a heightened risk of suicide; and covering up incidents of unconstitutional behavior by members of the custody staff at CSP-Sacramento.

89.   Each aforementioned policy, custom, or practice posed a substantial risk of serious harm to Decedent and each defendant knew, or in the exercise of reasonable care should have known, that these policies, customs or practices posed this risk.

90.   The actions of Defendants set forth herein were a motivating force behind the violations of Plaintiffs' and Decedent's constitutional rights as set forth in this Third Amended Complaint. As supervisors, Defendants MANES and DOES 4, 5, and 10 knew, or should have known, from their own knowledge of Decedent's records based upon review of SOMS and ERMS and the reports of their subordinates, that the policies, customs, and/or

practices as stated above provided inadequate security,
monitoring, supervision, classification and housing for this
Decedent, who had known mental health and medical disabilities.
Those policies, customs, and practices caused the violations of
Plaintiffs' and Decedent's constitutional rights as set forth
herein.

91.   As a direct and proximate result of the aforementioned
policies, practices, and customs, Plaintiffs sustained injuries
and damages as alleged herein.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Supervisory Liability for Negligent Hiring and Failure to Train
and Supervise Causing Constitutional Violations**

*By Plaintiffs M.B. III and TWYLLER WEARY, Individually and on
Behalf of the Estate of Milton Beverly, Jr., Against Defendants
MANES and DOES 4, 5, and 10 in Their Individual Capacities*

92.   Plaintiffs repeat, reallege, and incorporate by
reference the preceding paragraphs as though fully set forth
herein.

93.   Plaintiffs are informed and believe and thereon allege
that Defendants knew, or in the exercise of reasonable care
should have known, of a history and propensity and pattern at the
time of this incident for employees of CDCR to fail to provide
reasonable security, monitoring, and supervision of inmates such
as Decedent; to fail to train and ensure that deputies,
employees, and medical care providers provide reasonable security
and monitoring and supervision of inmates such as Decedent; and
that they provide prompt and competent access to and delivery of

1  mental health attention and intervention when inmates such as

2  Decedent were having a mental health crisis requiring prompt

3  investigation.

4      94.  Defendants' disregard of this knowledge or failure to

5  adequately investigate and discovery and correct such acts or

6  failure to act was a moving force which caused the violation of

7  Decedent's and Plaintiffs' constitutional rights.

8      95.  Plaintiffs are further informed and believe and thereon

9  allege that the defendants knew, or in the exercise of reasonable

10  care should have known, of such prior history and propensity at

11  the time such individuals were hired and/or during the time of

12  their employment. The defendants' disregard of this knowledge

13  and/or failure to adequately investigate and discover and correct

14  such facts caused the violation of Plaintiffs' constitutional

15  rights.

16      96.  Plaintiffs are informed and believe and thereon allege

17  that prior to the incident alleged herein, Defendants, acting

18  under color of their authority as supervisory officers of

19  deputies, counselors, physicians, nurses, staff, and mental

20  health and medical care providers, and in the course and scope of

21  their employment as such, committed similar acts of:

22          a. Failure to provide access to and delivery of mental

23             health and medical care and treatment for inmates at

24             Defendant CDCR with known mental disabilities;

25          b. Failure to provide adequate housing and properly

26             classify inmates in the CDCR so that they would have

27             access to and delivery of indicated mental health and

28             medical care;

      c. Failure to provide adequate and reasonable monitoring
and housing for inmates that present risk of suicide to
prevent mental health disasters such as attempted
suicides and suicides;

      d. Failure to supervise their subordinates to ensure that
staff, deputies, and employees were implementing and
complying with implementing policies and procedures to
ensure the reasonable security and safety of inmates;
and

      e. Discriminating against inmates with known mental health
disabilities by use of a disciplinary system that
increases incarceration and imposes punishment for
behavior resulting from or caused by their mental
health disability.

97. Plaintiffs are further informed and believe and thereon allege that defendants knew or in the exercise of reasonable care should have known of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these defendants and DOES 2, 3, 4, 5, and 10 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate, or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians, and nurses who had a history of inappropriate conduct, and as a result Decedent was harmed in the manner threatened by the pattern of practice.

98. At all times herein mentioned, and prior thereto, the defendants had the duty to perform the following, and violated

that duty:

      a. To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

      b. To objectively investigate incidents of in-custody injury, deaths, suicides, suicide attempts, inadequate classification, and contraindicated housing, and to take remedial action;

      c. To provide access to and delivery of mental and medical healthcare, intervention, treatment, follow-up, and attention to injured, ill, or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access to and delivery of competent mental and medical healthcare;

      d. To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

      e. To periodically monitor the quality and adequacy of mental health and medical care, attention, and treatment provided to mentally ill inmates;

      f. To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Defendant CDCR;

g. To periodically monitor the classification and hosing
   of mentally ill inmates to ensure they have reasonable
   security and safety and are properly house, and not
   housed with or exposed to persons with known dangerous
   propensities;

h. To comply with the statutory guidelines and regulations
   enacted for the protection of inmates held in a
   custodial setting;

i. To discipline and establish procedures to correct past
   violations, and to prevent future violations of
   constitutional rights of inmates, by not condoning,
   ratifying, and/or encouraging the violation of
   Decedent's and other inmates' constitutional rights.;

j. To periodically train custodial staff and counselors on
   understanding, recognizing, report, and responding to
   issues of inmates' mental healthcare and treatment; and

k. Not to discriminate against inmates with known mental
   health disabilities by use of a disciplinary system
   that increases incarceration and imposes punishment for
   behavior resulting from or caused by their mental
   health disability.

99. As a result of the conduct of defendants, as described
   above, Plaintiffs were damaged as alleged herein and as
   set forth above.

## FOURTH CAUSE OF ACTION

### Negligence – Wrongful Death

*By Plaintiff M.B. III, Individually, Against Defendants MANES,*
*MOHR, BALLARD, MUNROE, BROWN, VUE, DUTTON, and DOES 4, 5, and 10,*

*in Their Individual Capacities*

100. Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs as though fully set forth herein.

101. Defendants had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment, and/or emergency services to Decedent for his mental health condition. This includes the failure to provide antidepressant medication and/or other proper mental health treatment and therapy. Defendants and DOES 4, 5, and 10 breached their duty and were negligent in the performance of their duties, and this negligence caused the death of Decedent.

102. Defendants, acting within the course and scope of their employment, had a duty to assure the competence of their employee/agents. Defendants and Does 4, 5, and 10 breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians, employees, and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors, and other staff created an unreasonable risk of harm to persons such as Decedent.

103. The individually named defendants breached their duty of care to observe, report, monitor, and provide reasonable security regarding Decedent's condition, and failed to prevent his suicide.

104. As a direct and legal result of the aforesaid negligence, carelessness, and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Decedent, he was injured due to a serious but treatable mental health condition, and Plaintiffs have suffered damages as alleged above.

105. Specifically, Defendant MANES and DOES 4, 5, and 10 were aware, through their knowledge of the SOMS and ERMS records, the policies and procedures applicable to mentally ill inmates at CSP-Sacramento, their training and policies for the Enhanced Outpatient Program housing unit, their own observation, and/or the reports of their subordinates, of the need for adequate supervision, classification, and staffing at CDCR facilities to timely refer suicidal inmates, like Decedent, for medical, psychiatric, psychological, and/or hospital care. Despite this knowledge, they failed to implement a policy providing adequate supervision, classification, and staffing levels to provide observation and ongoing medical care to suicidal inmates.

106. Defendant MANES and DOES 4, 5, and 10, including agents and employees of other defendants, failed to conduct appropriate investigatory procedures to determine the need to obtain medical and psychiatric services for Decedent while Decedent was in the defendants' care, custody, and control.

107. As a direct and legal consequence of the aforesaid negligence, carelessness, and unskillfulness of the defendants, and each of them, Decedent's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate, and indicated intervention and treatment. His condition worsened and

resulted in his suicide. He suffered serious injury and harm
proximately caused by the negligent conduct of Defendants. As a
result of defendants' breach of duty of care to Decedent,
Decedent was injured as a result of a serious but treatable
mental health condition, and Plaintiff M.B. III has suffered the
damages as alleged herein.

### FIFTH CAUSE OF ACTION

**California Government Code §§ 844.6 and 845.6**

**Failure to Summon Medical Care**

*By Plaintiff M.B. III, Individually, Against Defendants MANES,*
*MOHR, BALLARD, VUE, MUNROE, BROWN, DUTTON, and DOES 4, 5, and 10*
*in Their Individual and Official Capacities*

108. Plaintiffs repeat, reallege, and incorporate by
reference the preceding paragraphs as though fully set forth
herein.

109. For all the reasons set forth above, Defendants knew or
had reason to know that Decedent needed immediate medical care
and that he had serious and obvious mental and medical conditions
that put the staff on notice that he should have his mental and
medical condition monitored. Defendants' failure to provide
immediate medical care in the form of adequate monitoring and
mental health care, where Decedent's health and mental condition
were deteriorating, proximately caused Decedent's suicide.

110. Pursuant to California Government Code §§ 844.6 and
845.6, the defendants had a duty to monitor, check, and respond
to the persons under their custody, supervision, and control.
Defendants knew or had reason to know that Decedent needed
physical and mental healthcare and treatment while incarcerated

1  at CSP-Sacramento and failed to take reasonable action to summon
2  or provide such care. They knew or had reason to know of the need
3  for intensive medical care for Decedent because of their
4  knowledge, from either SOMS, ERMS, or the prison medical records,
5  of his recent prior suicide attempts while in custody, his
6  participation in the Mental Health Service Delivery System, his
7  past placement in a "crisis bed," and the other documentation in
8  records available to and generated by the CDCR of Decedent's
9  being an immediate threat to his own safety.

10     111. The individuals at CSP-Sacramento who monitored,
11  supervised, treated, and administered Decedent as an inmate at
12  the prison, and who reported to the chain of command including
13  supervisors like Defendant MANES were in a position to know of
14  Decedent's need for medical care.

15     112. Defendants' knowledge of Decedent's obvious mental and
16  medical conditions put the staff at CSP-Sacramento on notice that
17  Decedent should have had his medical condition closely monitored,
18  that he should have been prevented from unsupervised time alone,
19  and that on or before November 24, 2016, he needed immediate
20  medical care and mental healthcare, where his health and mental
21  condition were deteriorating, and the lack of which proximately
22  caused his suicide.

23     113. Nevertheless, these individuals were not properly
24  trained or supervised so as to provide the immediate medical care
25  that was necessary to save Decedent's life, and did not provide
26  the close monitoring, supervision and/or medical and mental
27  healthcare that they had a duty to provide. This includes the
28  failure to provide antidepressant medication or other therapies

1  and interventions indicated by the patient's medical history

2  known to the staff of CSP-Sacramento.

3  **PRAYER FOR RELIEF**

4       Wherefore, Plaintiffs request relief on their own behalf and

5  on behalf of the Estate of MILTON BEVERLY, JR., as follows,

6  against each defendant:

7       1.   General and compensatory damages in an amount according

8            to proof;

9       2.   Special damages in an amount according to proof;

10      3.   Exemplary and punitive damages in an amount according

11           to proof;

12      4.   Other losses in an amount according to proof;

13      5.   Costs of suit;

14      6.   Attorneys' fees, under 42 U.S.C. § 1988, 42 U.S.C. §

15           12205, 29 U.S.C. § 794a(b), California Civil Code §§ 52

16           and 52.1, California Code of Civil Procedure § 1021.5,

17           and/or any other applicable provision of law; and

18      7.   Such other relief as may be warranted or as is just and

19           proper.

20

21  Dated:  November 5, 2018          THE SWEENEY FIRM
                                      and
22                                    GLICKMAN & GLICKMAN
                                      A LAW CORPORATION

23

24                                    */s/ Nicole E. Hoikka*

25                                    STEVEN C. GLICKMAN
                                      NICOLE E. HOIKKA
26                                    Attorneys for Plaintiffs

27  ///

28  ///

1    ///

2                          **JURY TRIAL DEMAND**

3         Plaintiffs hereby demand trial by jury in this case.

4

5    Dated:  November 5, 2018          THE SWEENEY FIRM
                                       and
6                                      GLICKMAN & GLICKMAN
                                       A LAW CORPORATION

7

8                                      */s/ Nicole E. Hoikka*

9                                      STEVEN C. GLICKMAN
                                       NICOLE E. HOIKKA
10                                     Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "1"

Steven C. Glickman, Esq. (SBN 105436)
Nicole E. Hoikka, Esq. (SBN 306324)
GLICKMAN & GLICKMAN,
A LAW CORPORATION
9460 Wilshire Boulevard, Suite 330
Beverly Hills, CA 90212-2732
Tel: (310) 273-4040

John E. Sweeney, Esq. (SBN 116285)
THE SWEENEY FIRM
315 S. Beverly Drive, Suite 305
Beverly Hills, CA 90212
Tel: (310) 277-9595

Attorneys for Plaintiffs M.B. III, etc., et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.; TWYLLER WEARY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr., <br><br> Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., <br><br> Defendants. | CASE NO. 2:17-cv-02395-WBS-DB <br><br> **DECLARATION OF TITICE BEVERLY PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32** |

1

DECLARATION OF TITICE BEVERLY
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

## DECLARATION OF TITICE BEVERLY

1.     This declaration is made pursuant to California Code of Civil Procedure §377.32.

2.     I am the proposed guardian ad Litem for Plaintiff M█████ B████████, III, who has a superior interest in this action and the sister of decedent MILTON BEVERLY, JR. (hereinafter "Decedent"). If called upon to testify in this matter, I could and would competently testify to the following facts as they are within my personal knowledge.

3.     Defendant STATE OF CALIFORNIA is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION was, at all times herein alleged, an agency of the STATE OF CALIFORNIA. At all times herein mentioned, the California Secretary of the Department of Corrections and Rehabilitation was SCOTT KERNAN. Defendant EDMUND G. BROWN, JR., at all times herein mentioned, was the Governor of the State of California.

4.     The date and place of Decedent's death is November 24, 2016 at California State Prison.

5.     No proceeding is now pending in California for administration of Decedent's estate.

6.     Plaintiff TWYLLER WEARY and I, as the proposed Guardian ad Litem for M█████ B████, III, are the Decedent's successors-in-interest (as defined in California Code of Civil Procedure §377.11) and succeed to the Decedent's interest in this action.

7.     Other than co-plaintiff TWYLLER WEARY, no other persons have a superior right to commence this action or proceeding or to be substituted for the Decedent in this pending action.

8.     A copy of the Sacramento County Coroner's Report regarding Decedent's

2

death is attached hereto and incorporated herein as Exhibit A.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this _7_ day of November, 2017 at Los Angeles, California.

By: *Titice Beverly*
TITICE BEVERLY
Proposed Guardian ad Litem for
M████ B████, III, a minor

3

DECLARATION OF TITICE BEVERLY
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

EXHIBIT "A"

# SACRAMENTO COUNTY
## CORONER

| CLASSIFICATION | 1 Final Classification Suicide | | 2 Case No. 16-05715 | 3 Deputy Assigned Maria Vargas | | 4a Date of Death 11/24/2016 | 4b Found? |
|---|---|---|---|---|---|---|---|
| **DECEDENT PERSONAL DATA** | 5 Name First: Milton | | 6 Name Middle: | 7 Name Last: Beverly | | 8a Time of Death 10:45 | 8b Fnd/Est/Unk: |
| | 9 Sex Male | 10 Race African American | | 11 Date of Birth 8/28/1987 | 12 Age 29 Years | | 13 Marital Status Divorced |

| RESIDENCE | 14 Usual Address 300 Prison Rd | | | |
|---|---|---|---|---|
| | 15 City Represa | 16 County Sacramento | 16a State CA | 17 Zip Code 95671 |

| IDENTIFICATION | 18 Remains identified by or how identified |
|---|---|
| | VARGAS, Maria               Fingerprints |

| RELATIVES | WEARY, Twyller          Mother |
|---|---|

| PLACE OF DEATH | 21 Place of Death Folsom State Prison | | |
|---|---|---|---|
| | 22 Street Address 300 Prison Rd | | |
| | 23 City Represa | 24 County Sacramento | 25 Zip 95671 |

| REMAINS | 26 Death Reported By KUKRALL | 27 Removed To Coroner Yes | 28 Type of Medical Examination Full Autopsy |
|---|---|---|---|

| CAUSE OF DEATH | 29 Cause    Asphyxia |
|---|---|
| | due to:    Neck Compression |
| | due to: |
| | due to; |

| OTHER SIGNIFICANT CONDITIONS | 30  None |
|---|---|

| INJURY INFORMATION | 31 Manner of Death Suicide | 32 Place of Injury Folsom State Prison | 33 At Work? No | 34a Date of Injury 11/24/2016 | 34b Fnd/Est/Unk |
|---|---|---|---|---|---|
| | 35 Address or Location 300 Prison Rd | | | 36a Time of Injury | 36b Fnd/Est/Unk Unk. |
| | 37 City Represa | 38 County Sacramento | | | 39 Zip Code 95671 |
| | 40 Describe how injury occurred     Decedent hanged himself in his cell. | | | | |

| CASE SUMMARY | See Page 2 |
|---|---|

Deputy _____     Date Signed     5/1/2017
Maria Vargas



# SACRAMENTO COUNTY
# CORONER

**Final Case Summary**

On 11/24/2016, the Sacramento County Coroner's Office received a report of the decedent's death from California Department of Corrections IA. As required by Government Code, Section 27491, an inquiry was made into the death. The decedent was removed to this office where an examination was performed by Jason P. Tovar, M.D.. The cause of death was determined to be:

Asphyxia

**Due To:** Neck Compression

**Other Significant Conditions:** None

Decedent was a 29 year old male with no known suicidal ideation that was found hanging in his cell. The decedent was alone in the cell when the incident occurred. No evidence of foul play or a struggle was noted on scene. He had recently requested a mental health appointment but was not known to be suicidal. His complaints at the mental health appointment were anxiety attacks, worsening voices, and insomnia. He did not alert anyone that he was suicidal. On the day of his death, he refused his medications. He also refused to leave his cell when everyone was released for free time outdoors. The decedent was alone in the cell for approximately two and a half hours. An autopsy was done on the body. No suspicious markings were noted on the body at time of autopsy. Toxicology was negative for alcohol and drugs of abuse.

Based on the circumstances and cause of death, the manner will be listed as Suicide.

EXHIBIT "2"

Steven C. Glickman, Esq. (SBN 105436)
Nicole E. Hoikka, Esq. (SBN 306324)
GLICKMAN & GLICKMAN,
A LAW CORPORATION
9460 Wilshire Boulevard, Suite 330
Beverly Hills, CA 90212-2732
Tel: (310) 273-4040

John E.Sweeney, Esq. (SBN 116285)
THE SWEENEY FIRM
315 S. Beverly Drive, Suite 305
Beverly Hills, CA 90212
Tel: (310) 277-9595

Attorneys for Plaintiffs M.B. III, etc., et al.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| M.B. III, a minor, by and through his Guardian Ad Litem, TITICE BEVERLY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr.; TWYLLER WEARY, individually and as Successor in Interest and Personal Representative of the Estate of Milton Beverly, Jr., <br><br> Plaintiffs, <br><br> vs. <br><br> CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., <br><br> Defendants. | CASE NO. 2:17-cv-02395-WBS-DB <br><br> **DECLARATION OF TWYLLER WEARY PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32** |

1

DECLARATION OF TITICE BEVERLY
PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE §377.32

# DECLARATION OF TWYLLER WEARY

1.     This declaration is made pursuant to California Code of Civil Procedure §377.32.

2.     I am a Plaintiff with a superior interest in this action and the mother of decedent MILTON BEVERLY, JR. (hereinafter "Decedent"). If called upon to testify in this matter, I could and would competently testify to the following facts as they are within my personal knowledge.

3.     Defendant STATE OF CALIFORNIA is, and at all times herein alleged was, a public entity organized and existing under the laws of the State of California. CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION was, at all times herein alleged, an agency of the STATE OF CALIFORNIA. At all times herein mentioned, the California Secretary of the Department of Corrections and Rehabilitation was SCOTT KERNAN. Defendant EDMUND G. BROWN, JR., at all times herein mentioned, was the Governor of the State of California.

4.     The date and place of Decedent's death is November 24, 2016 at California State Prison.

5.     No proceeding is now pending in California for administration of Decedent's estate.

6.     Plaintiff M███████ B███████, III a minor acting by and through his proposed Guardian ad Litem TITICE BEVERLY, and I are the Decedent's successors-in-interest (as defined in California Code of Civil Procedure §377.11) and succeed to the Decedent's interest in this action.

7.     No other persons have a superior right to commence this action or proceeding or to be substituted for the Decedent in this pending action.

8.     A copy of the Sacramento County Coroner's Report regarding Decedent's death is attached to the Declaration of TITICE BEVERLY submitted concurrently herewith, and is incorporated herein as Exhibit A.

2

1   I declare under penalty of perjury under the laws of the State of California and

2   the United States of America that the foregoing is true and correct.

3       Executed this 7 day of November, 2017 at Los Angeles, California.

5                                   By: _Twyller Weary_
                                        TWYLLER WEARY

28                                        3